HAROLD R. MONROE ET AL. *v.* FRANKLIN CRANDALL
(2910)

HULL, BORDEN and DALY, Js.

Argued November 14, 1984—decision released January 29, 1985

*Charles J. Irving,* for the appellant (defendant).

*Martin A. Gould,* with whom, on the brief, were *Alfred J. Garofolo* and *Mark W. Baronas,* for the appellee (plaintiff Twin County Sanitation Service Company, Inc.)

DALY, J. The plaintiffs instituted this action for libel in two counts against the defendant. The trial court rendered judgment on the first count in favor of the corporate plaintiff in the amount of $10,000 and rendered judgment on the second count in favor of the defendant. The defendant has appealed[1] from the judgment on the first count.

The trial court found the following facts: The plaintiff Twin County Sanitation Service Company, Inc. (corporation), is engaged in the business of refuse collection

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. General Statutes § 51-199 (c).

and disposal. The plaintiff Harold Monroe is a spokesman for the plaintiff corporation, although alleged to be its president and a director. Both plaintiffs have enjoyed a very good or excellent reputation in the past in their business dealings. The defendant, his family and relatives are also engaged in the refuse collection and disposal business. Both the plaintiff corporation and the defendant bid on a contract for refuse collection at the United States Naval Submarine Base in New London. The contract, which was to commence on January 1, 1979, was awarded to the plaintiff corporation.

On January 20, 1979, a mailgram was sent to the officer in charge of construction and a contract administrator at the submarine base, Captain William G. Matthews (then commander).[2] This mailgram protested the awarding of the contract to the plaintiff corporation, and stated that the plaintiff corporation "was not able and did not perform his [sic] duties as specified" in previous contracts. It further stated: "I have repeatedly pointed out through letters, meetings and phone calls to your office that Twin County did not perform [on previous contracts]" and that "[a]ll discrepancies and grievances should be on file within your office."

---

[2] The January 20, 1979 mailgram states as follows: "I am composing this letter not knowing any decisions you have made or will make in regard to the award of contract #N62472-79-C-3301. Should the low bidder withdraw his bid of $98,000 the contract under normal conditions would therefore go to the second lowest bidder. The second lowest bidder being Twin County at $115,000 Twin County holder of this contract from October 1977 to December 1978 was not able and did not perform his duties as specified in his contract. I have repeatedly pointed out through letters, meetings and phone calls to your office that Twin County did not perform required maintenance of containers. In our estimate this would have cost in the vicinity of $30,000. After being warned of his discrepancies in the first year of his contract and then given a 4 month extension he still continued his negligence in peforming contract obligations. In the event of the low bidder withdrawing his bid I am 'formally protesting' the award of this contract being given to Twin County. All discrepancies and grievances should be on file within your office. We truly trust that the navy having checked out all this information and documented proof of negligence on the part of Twin County that they will make the right and just decision."

On January 23, 1979, a second mailgram was sent to Matthews, referring to the plaintiff corporation's not performing its contract obligations, being negligent in performance and accusing it of "robbing the government."[3] Both mailgrams contained the defendant's name, home address and telephone number. The defendant was found to be the author of both mailgrams, although he denied having sent them.

The defendant had made complaints in the past regarding the plaintiff corporation's performance. In a mailgram to Matthews dated October 30, 1978, the defendant referred to his "list of grievances," which dovetails with conversations he had with Matthews. The second 1979 mailgram referred to the October 30, 1978 mailgram by its code number.

The two 1979 mailgrams were found to be libelous per se and general damages were awarded to the plaintiff corporation in the amount of $10,000.

On appeal, the defendant has raised the following issues: (1) whether the trial court erred in admitting into evidence the sixteen documents contained in a United States Navy file for the limited purpose of testing the credibility of the defendant and establishing a course of conduct; (2) whether the evidence was suffi-

---

[3] The January 23, 1979 mailgram states as follows: "Because of current events and happenings I am sending this letter to point out that Twin County is still not performing his contract obligations these grievances as listed in my mailgram number 4-061125-E-303002 on 10-30-78 are still outstanding and nothing has been done on Twin County's part to change these to date how is it that this contractor can be so negligent and yet Uncle Sam still hasn't exercised his options in lieu of non-performance of work in this point in time I feel that Uncle's only interest is the removal of waste from the submarine base this being only a part of the entire contract I feel that Uncle should reread the contract and enforce it as I have pointed out this contractor by not performing maintenance specified by this contract is actually robbing the government of at least $30,000 a year with such great non-performance on behalf of Twin County I cannot understand why Uncle would extend any more further time to such a negligent contractor respectfully yours."

cient to conclude that the defendant had sent the mailgrams dated January 20, 1979, and January 23, 1979; and (3) whether the amount of $10,000 awarded as general damages was excessive.

## I

The defendant claims that the sixteen documents should not have been admitted into evidence for the purpose of testing the defendant's credibility and establishing a course of conduct. Of the sixteen in controversy, six were admitted as parts of other exhibits and were properly before the court. They consisted of letters or mailgrams, five having been sent by the defendant to Matthews, and one having been sent by Matthews to the defendant. Three others (two letters and one mailgram) were from the defendant to other naval officers.

"While prior contradictory statements of a witness are normally unacceptable as evidence of anything other than facts bearing on the credibility of the witness, when the witness is a party to the action, his extrajudicial statement may be more than a mere contradiction. Such statement may be treated as an admission." Holden & Daly, Connecticut Evidence (1966) § 125 (d) (2). The eight documents which emanated from the defendant were not only admissible to effect his credibility, since he did not recall protesting the contract award to the plaintiff corporation, but would have qualified as admissions.

The defendant argues on appeal that many of these documents were never authenticated. The authentication of these documents, however, was not raised at trial. The defendant cannot rely upon a ground for the exclusion of evidence not raised in the trial court. Practice Book § 288; *State* v. *McCall*, 187 Conn. 73, 84, 444 A.2d 896 (1982).

In testing the inferences that the trier is justified in drawing from the proven facts, a party is entitled to have his evidence considered in the most favorable view which it could reasonably bear. *Adams* v. *Mohican Hotel,* 124 Conn. 400, 401, 200 A. 336 (1938); *Bunnell* v. *Waterbury Hospital,* 103 Conn. 520, 524, 131 A. 501 (1925). Taking the contents and dates of the correspondence, along with the totality of the circumstances, the trial court could readily have concluded that the defendant was the author of the documents which did not bear his signature.

Letters and telegrams between parties are admissible to show the negotiations and conduct of the parties. *M. Shapiro & Son Construction Co.* v. *Battaglia,* 138 Conn. 238, 246, 83 A.2d 204 (1951). Of the remaining documents, one pertains to the Freedom of Information Act, and others involve correspondence between naval officers and the defendant. "The trial court has a wide discretion in its rulings on the relevancy of evidence." *Graham* v. *Houlihan,* 147 Conn. 321, 332, 160 A.2d 745, cert. denied, 364 U.S. 833, 81 S. Ct. 70, 5 L. Ed. 2d 57 (1960); see Holden & Daly, supra, § 67 (c), p. 214.

We find no abuse of that discretion.

## II

The defendant has claimed there was insufficient evidence before the trial court to justify a finding that he was the author of the two January 1979 mailgrams.

The fact finding function is vested in the trial court with its unique opportunity to view the evidence presented in a totality of circumstances, including its observation of the demeanor and conduct of the witnesses and parties, which is not fully reflected in the cold, printed record that is available to us. Appellate review of a factual finding, therefore, is limited both as a prac-

tical matter and as a matter of the fundamental difference between the role of the trial judge and an appellate court. The reviewing court may reverse or modify the decision of the trial court if it determines that the decision is clearly erroneous in view of the evidence and pleadings in the whole record. "We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 222, 435 A.2d 24 (1980).

Courts necessarily rely upon circumstantial evidence and are entitled to draw reasonable and logical inferences from all the facts. " 'There is no distinction between direct and circumstantial evidence as far as probative force is concerned.' " *State* v. *Stepney,* 191 Conn. 233, 255, 464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. E. 2d 772, reh. denied, 466 U.S. 954, 104 S. Ct. 2163, 80 L. Ed. 2d 547 (1984); *State* v. *Perez,* 183 Conn. 225, 227, 439 A.2d 305 (1981).

As indicated previously, the trial court found that both mailgrams contained the defendant's name, address and telephone number. The January 20, 1979 mailgram cited prior protests made by the author of the mailgram. The January 23, 1979 mailgram referred to the defendant's October 30, 1978 mailgram by its code number. Despite the defendant's denial, the trial court could reasonably conclude that the defendant was their author.

### III

The defendant next challenges the award of $10,000 in general damages as being excessive.

The trial court found the mailgrams to be libel per se. A plaintiff may recover general damages where the

defamation in question constitutes libel per se. *Yavis v. Sullivan,* 137 Conn. 253, 76 A.2d 99 (1950). "When the defamatory words are actionable per se, the law conclusively presumes the existence of injury to the plaintiff's reputation. He is required neither to plead nor to prove it." *Urban v. Hartford Gas Co.,* 139 Conn. 301, 308, 93 A.2d 292 (1952). The individual plaintiff is "entitled to recover, as general damages, for the injury to his reputation and for the humiliation and mental suffering which the libel caused him." *Proto v. Bridgeport Herald Corporation,* 136 Conn. 557, 571, 72 A.2d 820 (1950).

"It is equally well settled that the credit, property or business reputation of a corporation can be injured by a false publication of defamatory matter, written or oral, which tends to prejudice it in the conduct of its trade or business, or to deter third persons from dealing with it. Since a corporation has no reputation in the sense that an individual has, it is only with respect to its credit, property or business that a corporation can be injured by a false publication. In determining whether the business reputation of a corporation has been injured, the test is not different from that which would be applied in determining whether an individual's business reputation has been defamed." (Footnotes omitted.) *Diplomat Electric, Inc. v. Westinghouse Electric Supply Co.,* 378 F.2d 377, 381 (5th Cir. 1967). That such damages are difficult of accurate determination, however, does not prevent recovery of them. *Proto v. Bridgeport Herald Corporation,* supra, 572. As a result of the libelous correspondence, the plaintiff corporation was subjected to increased supervision and scrutiny, along with having to repaint a number of its dumpsters.

"[W]e cannot disturb the court's finding as to the amount of damages unless it appears that the court unreasonably exercised the large discretion necessar-

ily vested in it and awarded damages so excessive as to be unreasonable and to amount to an injustice. . . . Each case depends so much upon its own facts that an amount justified in one would not necessarily be an indication of how much ought to be allowed in another." *Dunstan* v. *Round Hill Dairy, Inc.*, 128 Conn. 300, 302–303, 22 A.2d 631 (1941).

We find no abuse of discretion.

There is no error.

In this opinion the other judges concurred.

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. General Statutes § 51-199 (c).