STATE OF CONNECTICUT *v.* CHARLES MENDEZ
(5892)

DUPONT, C. J., SPALLONE and O'CONNELL, Js.

Argued May 4—decision released August 16, 1988

*Donald D. Dakers,* public defender, for the appellant (defendant).

*Susan C. Marks,* deputy assistant state's attorney, for the appellee (state).

DUPONT, C. J. The defendant is appealing from a judgment of conviction, rendered after a jury trial, of the crimes of assault in the first degree, in violation of General Statutes § 53a-59 (a) (1), attempted assault in the first degree, in violation of General Statutes §§ 53a-59 (a) (1) and 53a-49, and burglary in the third degree, in violation of General Statutes § 53a-103 (a). The defendant claims that the trial court erred (1) in permitting the state's expert witness to testify as to his opinion concerning an ultimate issue of fact, (2) in excluding from evidence certain medical records of the defendant, (3) in its jury instructions regarding the identification evidence adduced at trial, (4) in failing to charge the jury as requested concerning the defendant's alleged intoxication at the time the crimes were committed, and (5) in failing to find that the state's actions during closing argument constituted intentional prosecutorial misconduct. We find no error.

The jury could reasonably have found certain relevant facts. Two Yale University security officers, Mark Ciarciello and Barbara Morton, were on patrol when they observed a man pushing a shopping cart filled with clothing, a radio and stereo equipment. While questioning the individual as to where he had obtained these items, the officers observed that his rear pocket contained several sharpened screwdrivers and what appeared to be a handle of either a hatchet or a hammer. The officers ordered the individual to put his hands over his head to allow them to examine the contents of his pocket. A scuffle ensued during which the individual grabbed Ciarciello's revolver and proceeded to fire upon the officers, striking Ciarciello three times in the back of his left thigh and once in the right leg, and wounding Morton in the right arm. The assailant then fled the scene.

The New Haven Salvation Army store had been burglarized earlier that same evening. An employee of the store identified the items contained in the shopping cart as having been stolen from the store. The defendant had been a resident of a Salvation Army shelter during the prior six months and had worked intermittently at the store during that time period. The defendant had worked in the store on the day the burglary occurred and had helped process the items that were taken. After the date of the burglary, the defendant did not report to work and never returned to the store. Outside the store the police located a plastic turntable dustcover on which the defendant's fingerprints were found. After his arrest, the defendant admitted to the police that he had perpetrated the Salvation Army burglary and had shot the officers, but claimed that he had been intoxicated at the time he committed these acts. At his trial, the defendant presented two distinct but inconsistent theories of defense. He claimed that his identity as the assailant had not been proven beyond a

reasonable doubt, and that, if it were, he could not be found guilty because of his intoxication.

Following the shooting, both officers viewed a photographic array but were unable to select any photograph as that of their assailant. Subsequent to the defendant's arrest, however, both officers viewed a second photographic array and identified the defendant's photograph as that of their assailant. Ciarciello testified that prior to his identification of the defendant in the second photographic array, he had viewed a single old police photograph of the defendant. Ciarciello could not recall the precise circumstances under which he viewed the single photograph but he believed it was displayed to him by a police officer. Both officers subsequently identified the defendant in court. The trial court denied the defendant's motion to suppress Ciarciello's photographic identification and in-court identification of the defendant. The court found that although Ciarciello's viewing of the single photo rendered the identification unnecessarily suggestive, the identification was reliable under the totality of the circumstances.

The defendant's first claim is that the trial court erred in permitting the state's expert witness, a medical doctor, to testify as to his opinion whether Ciarciello "suffer[ed] a serious loss or impairment of a bodily function or a bodily organ" as a result of the shooting. The state had the burden of proving beyond a reasonable doubt that the defendant had caused "serious physical injury" to the victim.[1] The defendant argues that the doctor's

---

[1] General Statutes § 53a-59 provides in pertinent part: "(a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument. . . ."

General Statutes § 53a-3 (4) defines "serious physical injury" as meaning "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ."

response to the question was inadmissible since it embraced an opinion on an ultimate issue to be decided by the trier.

An expert witness is not ordinarily permitted to express an opinion on an ultimate issue of fact which is to be decided by the trier of fact. *State* v. *Vilalastra,* 207 Conn. 35, 41, 540 A.2d 42 (1988); *Kowalewski* v. *Mutual Loan Co.,* 159 Conn. 76, 80, 266 A.2d 379 (1970). " 'Experts can sometimes give an opinion on an ultimate issue where the trier, in order to make intelligent findings, needs expert assistance on the precise question on which it must pass.' " *State* v. *Vilalastra,* supra, quoting C. Tait & J. LaPlante, Handbook of Connecticut Evidence (2d Ed. 1988) § 7.17.3, p. 186. The doctor's testimony, which included a description of the injuries suffered and the permanent impairment rating given to Ciarciello by the doctor pursuant to workers' compensation proceedings, was necessary for the jury to intelligently make a finding as to whether Ciarciello had suffered a "serious loss or impairment of the function of any bodily organ." We conclude that the trial court did not abuse its discretion in permitting the doctor's testimony. *State* v. *Rogers,* 207 Conn. 646, 652, 542 A.2d 1136 (1988).

The defendant's second claim is that the trial court erred in excluding from evidence medical records of the defendant which indicated that, six months prior to the commission of the offenses which are the subject of this appeal, the defendant was admitted to a hospital and referred to a detoxification center. The medical records were found by the trial court to be too remote in time to be probative on the issue of whether the defendant was intoxicated at the time the offenses were committed. The defendant argues that these medical records were relevant to his claim at trial that because he was intoxicated on the night the burglary

and assault occurred, he was unable to form the specific intent required for the crimes with which he was charged.

A trial court possesses broad discretionary power in determining the relevancy or remoteness of evidence. *Monroe* v. *Crandall,* 3 Conn. App. 214, 219, 486 A.2d 657 (1985); *Hayes* v. *Coventry,* 2 Conn. App. 351, 354, 478 A.2d 620 (1984). Its determination should not be disturbed on appeal unless a clear abuse of discretion is shown. *State* v. *DeForge,* 194 Conn. 392, 396, 480 A.2d 547 (1984); *Larensen* v. *Karp,* 1 Conn. App. 228, 235, 470 A.2d 715 (1984) (*Dupont, J.,* dissenting). The trial court acted well within its discretion in concluding that the medical records, stemming from events which occurred several months prior to the crimes committed, were not probative as to whether the defendant was intoxicated at the time the shootings occurred.

The defendant next claims error in the trial court's failure to instruct the jury on the identification evidence adduced at trial in accordance with the defendant's requested charge based on the "model" *Telfaire* instruction on identification. *United States* v. *Telfaire,* 469 F.2d 552 (D.C. Cir. 1972). Although the defendant concedes that the trial court was not required to adopt verbatim the defendant's requested instruction; *State* v. *Harrell,* 199 Conn. 255, 269–70, 506 A.2d 1041 (1986); he argues that the court's instructions on identification were so limited as to constitute harmful error.[2] We do not agree.

---

[2] The trial court charged the jury as follows: "You heard testimony from eyewitnesses in this case. The eyewitnesses [sic] of identification are well known and you should receive with caution any identification testimony from an eyewitness and consider carefully whether that testimony is accurate in his belief and in his testimony. You should consider what opportunity each person had to make that observation, whether or not that person had seen the defendant before and all of the other circumstances surrounding such observation.

"Eyewitness identification is sometimes unreliable, but its weight like the weight of any testimony is ultimately for you to decide."

Our review of the instruction given by the trial judge indicates that it adequately covered the dangers of misidentification. The jury instructions given in this case are virtually identical to those found to be adequate in *State* v. *Harrell,* supra, 270 n.15. "While the instruction did not delineate specific factors for the jury to consider in assessing identification testimony in such detail as in *Telfaire";* id., 270; the jury in this case as in *Harrell* was warned to "consider carefully whether that witness is accurate in his belief and in his testimony." The jury was further warned to "receive with caution any identification testimony from an eyewitness" and to "consider what opportunity each person had to make that observation, whether or not that person had seen the defendant before and all of the other circumstances surrounding such observation."

We cannot agree with the defendant's argument that the circumstances surrounding the pretrial identification of the defendant, as well as some inconsistency in pretrial eyewitness identifications of the defendant, required a more detailed jury instruction.[3] We conclude that the jury charge fairly and adequately addressed the dangers of misidentification and no injustice was done to either party in the case. *State* v. *Davis,* 198 Conn. 680, 687, 504 A.2d 1372 (1986); *State* v. *Elliott,* 8 Conn. App. 566, 573, 513 A.2d 1285, cert. denied, 201 Conn. 813, 517 A.2d 630 (1986).

The defendant's fourth claim is that the trial court erred in failing to charge the jury, as requested, that once the issue of the defendant's intoxication was raised, the state had the burden of proving beyond a reasonable doubt that such intoxication did not negate the specific intent required for the offenses charged.

---

[3] We note also that the identity of the defendant was hardly in substantial dispute in light of his confession to the police. See *State* v. *Harrell,* 199 Conn. 255, 270, 506 A.2d 1041 (1986).

The court repeatedly instructed the jury that the state at all times had the burden of proving, beyond a reasonable doubt, that the defendant possessed the specific intent required of the crimes with which he was charged. The court also emphasized the effect that the defendant's allegation of intoxication had on the jury's determination of whether the state carried its burden of proving that the defendant possessed the intent required for the offenses charged. The charge requested by the defendant is no more than a rephrasing in the negative of the instructions actually given by the court. The court's jury charge gave a clear understanding of the significance of intoxication in this case as well as proper guidance to the jury as to its ultimate determination of that issue. "Although the trial court's instructions to the jury may not have been phrased precisely to the defendant's liking, there is no error when, as here, the charge stated the law correctly." *Kapilotis* v. *Shop Rite Supermarket, Inc.*, 14 Conn. App. 250, 252, 540 A.2d 376 (1988).

The defendant finally claims that the state's conduct during closing argument constituted intentional prosecutorial misconduct. During closing argument, the state placed on a bulletin board a sketch and a photograph of the defendant, both of which had been admitted into evidence as exhibits, and a photocopied enlargement of the photograph that had not been admitted into evidence. Although the trial court denied the defendant's motion for a mistrial based on this action, the court directed the state to remove the photocopied enlargement. The defendant argues that the placement before the jury of the photocopy which had not been admitted into evidence was prejudicial and deprived him of a fair trial.

The defendant has failed to provide this court with a transcript of the closing arguments.[4] Without a tran-

---

[4] The defendant had requested that closing arguments not be recorded and therefore transcripts were unavailable. The defendant has provided

script, we have no basis for concluding whether the state had the opportunity to comment on the pictures prior to the defendant's objection or whether the jury had an adequate opportunity to view the pictures. It is the obligation of the appellant to provide this court with an adequate appellate record for review. *Accurate Forging Corporation* v. *UAW Local No. 1017,* 189 Conn. 24, 28, 453 A.2d 769 (1983); *State* v. *McNellis,* 15 Conn. App. 416, 448–49, 546 A.2d 292 (1988). Without such a complete record, we decline to engage in speculation as to what occurred during closing argument. Furthermore, the court excused the jury as soon as the controversy arose and did not thereafter allow the state's attorney to comment on the photocopy during final argument.

There is no error.

In this opinion the other judges concurred.

this court with a brief transcript commencing with the defendant's objection to the state's actions and concluding with the court's denial of the defendant's motion for a mistrial.