## STATE OF CONNECTICUT *v.* RICHARD LAMME
### (7108)

DUPONT, C. J., STOUGHTON and NORCOTT, Js.

Argued May 9—decision released September 5, 1989

*James J. Ruane,* for the appellant (defendant).

*James M. Ralls,* deputy assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Susan Marks* and *Richard Palumbo,* assistant state's attorneys, for the appellee (state).

NORCOTT, J. The defendant appeals from the judgment of conviction, after a jury trial, of one count of operation of a motor vehicle while under the influence of intoxicating liquor, in violation of General Statutes § 14-227 (a), and one count of operation of a motor vehicle while his license was under suspension, in violation of General Statutes § 14-215 (a). Prior to trial, the defendant moved to suppress evidence of all observations by the police involving the defendant's performance of field sobriety tests. After a hearing, the trial court denied the defendant's motion.

On appeal, the defendant claims that the trial court erred (1) in failing to suppress the evidence derived from the roadside sobriety tests, (2) in admitting the opinion testimony of certain police officers regarding the defendant's intoxication, and (3) in instructing the jury on the principle of reasonable doubt. We find no error.

The jury could reasonably have found the following facts. In the early morning of October 23, 1987, Officer Richard Applebaum of the Trumbull police department was assigned to special duty at the Trumbull Marriott Hotel. Responding to a complaint from the hotel management concerning the defendant, Applebaum found the defendant asleep in a chair in the front lobby. Upon awakening him, Applebaum noticed a strong odor of alcohol on his breath. The defendant at first became irate, loud and boisterous, and Applebaum had to calm him by explaining that he was not arresting him but was merely asking him to leave the hotel lobby. After Applebaum offered to arrange a safe ride home for him, the defendant responded that his car was

parked in a lot next to the Marriott and that he would wait in his car for a friend at the bar who would drive him home. At trial, Applebaum testified that he then observed the defendant walk, with an uncertain gait, to his automobile.

Applebaum then radioed police headquarters with a description of the defendant's vehicle and asked that a police car be sent into the area. When he returned, the defendant's vehicle was no longer in the parking lot. Applebaum called headquarters again to report this fact, and was informed that another Trumbull police officer had already stopped the defendant.

Thereafter, Applebaum joined Trumbull police officer Thomas Savarese at the side of the road near the entrance to the Merritt Parkway, where Savarese was completing field sobriety tests on the defendant. Savarese testified at both the hearing on the motion to suppress and at the trial that he stopped the defendant and told him that his vehicle had been stopped for failure to have headlights on. When the defendant responded to Savarese, the officer noticed a strong odor of alcohol on the defendant's breath. Savarese further testified that, after he had administered the sobriety tests, he arrested the defendant for driving while under the influence and took him to headquarters where the defendant acted belligerently and spoke with slurred speech. Police officer Richard Bernaud testified that, during the booking procedure, the defendant was combative, his speech was slurred and he was hesitant in his movements. Bernaud also testified that he smelled the odor of alcohol on the defendant's breath.[1]

The defendant testified that he had consumed several drinks at the hotel bar but was not intoxicated.

---

[1] Although the police attempted to administer an intoximeter test, they failed to follow the proper procedures, resulting in the exclusion of the test results from the trial.

# I

The essence of the defendant's first claim is that the trial court erred in determining that probable cause to arrest is not a condition precedent to the administering of a field sobriety test. The defendant argues that because the trial court found that probable cause for the defendant's arrest did not arise until after the field sobriety tests, the court erred in admitting the observations by the police concerning those tests.[2] The trial court rejected the defendant's argument and held that the police had legally detained the defendant on a reasonable suspicion and that the roadside sobriety tests were a minimal intrusion on his constitutional rights. The trial court further held that the police "seized" nothing from the defendant and, accordingly, that the police testimony regarding the observations of the roadside tests was admissible.

The police may detain an individual for a brief period of time without probable cause to make an arrest, if they have a reasonable and articulable suspicion that the person is involved in criminal activity. *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *State* v. *Carter,* 189 Conn. 611, 617, 458 A.2d 369 (1983). The purpose of such a detention is to maintain the status quo while investigating the circumstances that give rise to the suspicion of criminal wrongdoing. See *Adams* v. *Williams,* 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972); *State* v. *Carter,* supra, 618. Once a lawful stop is made, a police officer's suspicions may become further aroused and "the stop may

---

[2] At trial, the state premised the admissibility of the sobriety test results on (1) probable cause, (2) the consent of the defendant, and (3) the contention that the test results were "nontestimonial evidence." The trial court did not address the grounds of consent or "nontestimonial evidence" and the state has not pursued the ground of "consent" on this appeal. Accordingly, we will consider the state's claim with respect to consent abandoned.

be prolonged and the scope enlarged as required by the circumstances, provided the scope of the investigation remains within the limits created by the facts upon which the stop is predicated and the suspicion which they arouse. *Terry* v. *Ohio,* supra, 21–22, 29 . . . ." *State* v. *Perez,* 181 Conn. 299, 305, 435 A.2d 334 (1980).

The fourth amendment to the United States constitution and article first, § 7, of the constitution of Connecticut guaranty the right to be secure against unreasonable searches and seizures. Connecticut cases have presumed that roadside sobriety tests are incident to the initial stop and that chemical blood and breath tests are incident to the arrest. See *State* v. *Hancich,* 200 Conn. 615, 618–19, 513 A.2d 638 (1986); *State* v. *Rutledge,* 17 Conn. App. 250, 252, 552 A.2d 435 (1989); *State* v. *Smith,* 16 Conn. App. 156, 158, 547 A.2d 69 (1988).[3] The fourth and fourteenth amendments apply, however, "because stopping an automobile and detaining its occupants constitute a 'seizure' within the meaning of those Amendments, even though the purpose of the stop is limited and the resulting detention quite brief. The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard of 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents in order ' "to safeguard the privacy and security of individuals against arbitrary invasions. . . ." ' *Marshall* v. *Barlow's, Inc.,* 436 U.S. 307, 312 [98 S. Ct. 1816, 56 L. Ed. 2d 305] (1978), quoting *Camara* v. *Municipal Court,* 387 U.S. 523, 528 [87 S. Ct. 1727, 18 L. Ed. 2d 930] (1967). Thus, the permissibility of a particular law

[3] Although the defendant challenges the admission of the roadside sobriety tests under article first, § 7, of the state constitution, he advances no argument for the separate treatment of the issue on appeal. We therefore consider only the federal and state constitutional claims actually briefed by him. See *State* v. *Mercer,* 208 Conn. 52, 67 n.9, 544 A.2d 611 (1988); *State* v. *Hall,* 17 Conn. App. 502, 505 n.1, 554 A.2d 746, cert. granted, 211 Conn. 807, 559 A.2d 1141 (1989).

enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware* v. *Prouse,* 440 U.S. 648, 653–54, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). The intrusion must be confined to what is "minimally necessary" under the circumstances. *Terry* v. *Ohio,* supra, 30.

In the present case, there is no question that the initial stop, made because the defendant was driving without headlights in the dark of night, was permissible. See *Delaware* v. *Prouse,* supra, 663. After making the stop near an entrance to the Merritt Parkway in Trumbull, Savarese detected a strong odor of alcohol on the defendant's breath, and, suspicions aroused, he conducted field sobriety tests.

The state has a vital interest in keeping intoxicated drivers off the roads and highways. That interest is evinced by our legislature's passage of General Statutes § 14-227a (a) (2), which makes it per se illegal for a person to drive "while the ratio of alcohol in the blood of [the driver] is ten-hundredths of one per cent or more of alcohol, by weight." Balanced against that strong state interest is the intrusiveness of roadside sobriety testing, by which the police measure the physical performance of a suspected intoxicated driver before allowing that person to continue driving. The defendant relies heavily on *People* v. *Carlson,* 677 P.2d 310 (Colo. 1984), in which a Colorado court required that probable cause to arrest exist before the police administer field sobriety tests. The defendant strongly urges that we adopt the *Carlson* rule in Connecticut. Other jurisdictions, however, have held that the degree of intrusion by the governmental authority into a person's affairs in administering such tests is minimal and therefore is outweighed by the strong governmental interest. See *State* v. *Superior Court,* 718 P.2d 171 (Ariz. 1986); *State* v. *Golden,* 171 Ga. App. 27, 318 S.E.2d 693

(1984). We agree with the latter holdings. To hold otherwise and to accept the defendant's position that we require the police to have the equivalent of probable cause to arrest before giving the field sobriety tests would seriously impair the state's efforts to meet the enormous danger posed by the presence of intoxicated drivers on the highways. In rejecting the *Carlson* standard, we find the holding of *State* v. *Superior Court,* supra, to be the most compelling and persuasive. In that case, the Arizona Supreme Court held that "roadside sobriety tests that do not involve long delay or unreasonable intrusion, although searches under the fourth amendment, may be justified by an officer's reasonable suspicion (based on specific, articulable facts) that the driver is intoxicated." Against this standard, we conclude that the trial court correctly admitted evidence regarding the roadside sobriety tests.

The defendant also argues that article first, § 9, of the Connecticut constitution bars the admission of roadside sobriety tests. This section of our constitution provides that "[n]o person shall be arrested, detained or punished except in cases clearly warranted by law." The gravamen of the defendant's claim is that sobriety tests cannot be conducted when the detention is not "clearly warranted" and that the meaning of "clearly warranted" is the equivalent of probable cause. We find the defendant's claim to be without merit.

Although we note that our Supreme Court has held that the provision of article first, § 7, of the Connecticut constitution provides more substantive protection to citizens than does the fourth amendment to the federal constitution in the determination of probable cause; *State* v. *Kimbro,* 197 Conn. 219, 233, 496 A.2d 498 (1985); the defendant's reliance on that case is inapposite. Nowhere in that decision did the Supreme Court suggest that the *Terry* stop situation warranted the higher standard of probable cause. We have not found,

nor has the defendant presented any support for his claim that "[t]he state constitution mandates a standard of probable cause for even the detention of an individual which exceeds that of the Federal Constitution."

As we have previously noted, our Connecticut case law presumes that roadside sobriety testing is incident to the initial stop, based on the officer's reasonable suspicion, rather than on the subsequent arrest. Nothing cited by the defendant has persuaded us to conclude the contrary. Thus, the question is whether the administration of a field sobriety test to a suspect on the basis of a reasonable, articulable suspicion in the absence of probable cause is "clearly warranted" within the meaning of the Connecticut constitution. On the basis of our reasoning with respect to the first claim of error, we answer that question in the affirmative. The trial court did not err in denying the defendant's motion to suppress.

## II

The defendant next contends that the trial court erred in admitting certain police opinion testimony regarding the defendant's intoxication. The facts relevant to this claim are as follows: At trial, Applebaum testified that, from his observations of the defendant at the hotel, he believed that the defendant "was impaired at the very least and should not be allowed to operate [a vehicle]." Savarese later testified that he had observed the defendant driving his automobile without the headlights on and had pulled him over to the side of the road. Savarese testified that he had to bang on the defendant's car window for about "twenty seconds" before the defendant rolled the window down, at which point the officer noticed a strong odor of alcohol. Believing he was confronting a possibly intoxicated driver, Savarese administered field sobriety tests to the defendant. Savarese also testified that, on the basis of his observations and the roadside sobriety tests, he

believed that the defendant "was intoxicated and that he was unfit to drive a car safely." The defendant now claims that the trial court erred in admitting the opinion testimony of Applebaum and Savarese because it concerned their opinions on the ultimate issue to be decided by the jury.

In addressing this claim of error, we first note that the trial court ruled that all the opinions before it were lay opinions on the issue of intoxication. The court's ruling was that "under the law in the State of Connecticut, any person, even a lay person, may describe an individual that he has observed and state whether or not he believes that such individual was under the influence of alcohol."

Accordingly, the trial court admitted the testimony of both Applebaum and Savarese as "lay opinion" on the issue of intoxication. The defendant claims that the trial court mistakenly characterized the opinion testimony before it and, the mischaracterization notwithstanding, erroneously allowed opinion evidence on an ultimate issue of fact.

We agree with the defendant, in part, in that the trial court improperly characterized Savarese's opinion as that of a lay person. At trial, the state framed its offer of Savarese's opinion as that of an expert, but the trial court rejected that offer.[4] Prior to asking Savarese for

[4] During this part of the trial the following questions were put to Savarese by the assistant state's attorney:

"Q. Based upon your training and experience, did you form an opinion as to Mr. Lamme's ability to safely operate an automobile?

\* \* \*

"Q. Did you form an opinion based on your training and experience as to whether Mr. Lamme was under the influence of intoxicating liquor?

\* \* \*

"Q. Based upon your training and experience and your observations, officer, and the tests which were performed upon Mr. Lamme, did you come to a conclusion as to whether or not you believed Mr. Lamme was under the influence of intoxicating liquor?"

his opinion on the defendant's state of intoxication and ability to drive, the assistant state's attorney had established Savarese's particular training and experience in detecting intoxicated drivers as a patrol division officer.

"Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." *State* v. *Kemp*, 199 Conn. 473, 476, 507 A.2d 1387 (1986). Savarese's training included "D.W.I." training, which included, as he testified, "how to identify possible drunk drivers, [and] how to perform certain tests to determine if the subject [who] was pulled over for drunk driving [is] actually drunk." It is clear from the record that his opinion, which included his interpretations of the results of the roadside sobriety tests, was based on this training. As such, his opinion qualified as that of an expert and should have been accorded that status. The defendant, however, contends that an expert witness is precluded from giving an opinion as to the ultimate issue of fact.

"An expert witness is not ordinarily permitted to express an opinion on an ultimate issue of fact which is to be decided by the trier of fact. *State* v. *Vilalastra,* 207 Conn. 35, 41, 540 A.2d 42 (1988); *Kowalewski* v. *Mutual Loan Co.,* 159 Conn. 76, 80, 266 A.2d 379 (1970). ' "Experts can sometimes give an opinion on an ultimate issue where the trier, in order to make intelligent findings, needs expert assistance on the precise question on which it must pass." ' *State* v. *Vilalastra,* supra, quoting C. Tait & J. LaPlante, Handbook of Connecticut Evidence (2d Ed. 1988) § 7.17.3, p. 186." *State* v. *Mendez,* 15 Conn. App. 531, 535, 545 A.2d 587, cert. denied, 209 Conn. 810, 548 A.2d 441 (1988). Savarese's testimony, which included a description and interpretation of and conclusions regarding the roadside sobri-

ety tests, was necessary for the jury intelligently to make a finding as to whether the defendant violated General Statutes § 14-227a (a) by "[operating] a motor vehicle while under the influence of intoxicating liquor or any drug or both." The opinion portion of Savarese's testimony differed from any other opinion testimony regarding the sobriety of an individual because it was based in great part on knowledge and skill beyond the ken of the average juror. We conclude that Savarese's testimony fit the test for admission of expert testimony on the ultimate issue as set out in *Vilalastra,* and was therefore admissible.[5]

The trial court's admission of Savarese's opinion testimony was correct, but the grounds for its admission were erroneous. "This court is not required to reverse a ruling of the trial court which reached a correct result, albeit for a wrong reason. *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978)." *Herrmann* v. *Summer Plaza Corporation,* 201 Conn. 263, 274, 513 A.2d 1211 (1986).

With respect to the testimony of Applebaum, we find that the trial court did not err in admitting this evidence. The relevant part of Applebaum's testimony regarding the defendant's state of intoxication is as follows:

Mr. Palumbo: "When you observed him walking out, could you describe for us please how he walked?

"A. He walked rapidly but he was unsure of his gait.

"Q. Do you base your opinion as to how he was walking—your opinion is based upon your training and experiences as a police officer?

---

[5] The defendant also suggests that expert opinion on the ultimate issue to be decided by the jury is inadmissible under General Statutes § 54-86. This claim was not raised at trial and, therefore, we will not review it. Practice Book § 4185.

"A. That's correct.

"Q. And, prior experience with arresting people for operating under the influence?

"A. Yes. That's correct.

"Q. Okay. Again, based upon your experience, did you formulate an opinion as to whether he was fit to drive?

"A. Yes, I did.

"Q. What was that opinion?

"[Defense counsel:] Objection as to that opinion. That calls for an opinion on the ultimate issue.

\* \* \*

"Q. Did you formulate an opinion, officer, as to his fitness to operate an automobile?

"A. Yes. It was my opinion he was impaired at the very least and should not be allowed to operate."

Unlike Savarese's testimony, Applebaum's opinion was not based on any expertise or specialized skill. Any person who had observed the defendant in the Marriott hotel lobby would have been able to formulate an opinion as to the defendant's sobriety or fitness to operate an automobile. Accordingly, the trial court was correct to characterize Applebaum's conclusion as a lay opinion that could be measured and weighed against any other evidence that might suggest, for example, the defendant's sobriety. The defendant argues, however, that the trial court erred in allowing lay opinion on the ultimate issue of operating under the influence of intoxicating liquor.

Applebaum's opinion was based on events that occurred prior to the defendant's ever entering his automobile. This opinion concerned the defendant's condition in the hotel lobby, a condition from which

Applebaum concluded that the defendant was unfit to drive. This opinion, however, did not go to the ultimate issue of fact that was to be decided by the trier of fact, namely, whether, as prohibited by General Statutes § 14-227a, the defendant was *operating a motor vehicle* while under the influence of intoxicating liquor. Applebaum's testimony was decidedly distinguishable from that of Savarese, who not only observed the defendant operate the vehicle suspiciously, but also concluded from the application of his expert training that the defendant, in fact, operated that vehicle while intoxicated. Applebaum's answers to the questions put to him did not require him to apply a legal principle or standard to certain facts or to state a legal conclusion therefrom with respect to the crime charged. See *State v. Jones,* 124 Conn. 664, 668, 2 A.2d 374 (1938).

" 'The general rule is that witnesses must state facts and not their individual opinions, but there are exceptions to this rule as well established as the rule itself.' *Sydleman* v. *Beckwith,* 43 Conn. 9, 11 [1875]." *Johnson v. Newell,* 160 Conn. 269, 277, 278 A.2d 776 (1971); see also C. Tait & J. LaPlante, Connecticut Evidence (2d Ed. 1988) § 7.15. "Because '[t]he condition of intoxication and its common accompaniments are a matter of general knowledge'; *State* v. *Jones,* [supra], 667; *Way v. Pavent,* 179 Conn. 377, 380, 426 A.2d 780 (1979); *State* v. *Katz,* 122 Conn. 439, 442, 189 A. 606 (1937); *Thomas* v. *Rose,* 10 Conn. App. 71, 74, 521 A.2d 597 (1987); our Supreme Court has held that laymen may testify as to their opinion of whether a person is intoxicated. *State* v. *Jones,* supra; see also J. Wigmore, Evidence (Chadbourn Rev. 1986) § 1974; C. Tait & J. LaPlante, [supra] § 7.15 (c)." *State* v. *McKenna,* 11 Conn. App. 122, 136–37 n.9, 525 A.2d 1374, cert. denied, 205 Conn. 806, 531 A.2d 939 (1987). We conclude that the trial court did not err in allowing Apple-

baum to testify, as a lay person, as to his opinion of the sobriety of the defendant, a subject that was clearly relevant to the trial.

## III

The defendant's final claim is that the trial court erred in instructing the jury that a reasonable doubt is "a real or honest doubt [for which] a valid reason can be given" and one which "in serious affairs which concern you in your everyday life you would pay attention to and consider." The defendant claims that these definitions unconstitutionally lowered the state's burden of proof and thus constitute reversible error.

In a criminal case, the trial court must instruct the jury on the constitutional requirement that the state prove the defendant's guilt beyond a reasonable doubt. *State* v. *DelVecchio,* 191 Conn. 412, 420, 464 A.2d 813 (1983). " '[C]ourts . . . [should] not use language in instructions which can be understood as diluting or in any way impairing the constitutional requirement of proof beyond a reasonable doubt.' *United States* v. *Pine,* 609 F.2d 106, 108 (3d Cir. 1979)." *State* v. *Smith,* 183 Conn. 17, 28, 438 A.2d 1165 (1981). It is well established that the test to be applied on appellate review to a claim of instructional error is whether the charge as a whole presented the case to the jury so that no injustice has been done. *State* v. *Lytell,* 206 Conn. 657, 664, 539 A.2d 133 (1988); *State* v. *Moss,* 189 Conn. 364, 370, 456 A.2d 274 (1983); *State* v. *Derrico,* 181 Conn. 151, 170, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980).

After instructing the jury on the presumption of innocence and stating that the state bore the burden of proving each and every element of the crime charged, the trial court gave a detailed charge regarding reasonable doubt.[6]

---

[6] The trial court's instructions regarding reasonable doubt were as follows: "A reasonable doubt, therefore, is a doubt for which a valid reason

After reading and considering the charge as a whole, we conclude that it is not reasonably possible that the jurors were misled as to the burden that the state had to sustain. On appeal, we will not subject the language of the court's charge to critical dissection or examine it in artificial isolation. See *State* v. *DelVecchio,* supra, 421. Reviewing the instruction in its entirety, we find that the trial court fairly apprised the jury of the reasonable doubt standard so that no injustice was done.

There is no error.

In this opinion the other judges concurred.

---

can be given. It is a doubt which is something more than a guess or a surmise. It is not a conjecture, nor is it a fanciful or capricious doubt. A reasonable doubt is not a doubt which is raised by someone simply for the sake of raising a doubt, nor is it a doubt suggested by the ingenuity of counsel or of a juror which is not warranted by the evidence or lack of evidence in the case.

"In other words, a reasonable doubt is a real or honest doubt. It is a doubt which has its foundation in the evidence or the lack of evidence produced in the courtroom. It is such a doubt as in the serious affairs which concern you in your everyday life you would pay attention to and consider.

"Proof beyond a reasonable doubt is proof that precludes every reasonable hypothesis except that which tends to support and is consistent with the defendant's guilt and is inconsistent with any other rational conclusion. However, absolute certainty in the affairs of life is almost unattainable and for that reason absolute certainty on the part of the jury before it returns a verdict of guilty is not required.

"What the law does require is that after reviewing all of the evidence which includes the exhibits, if there is something in the evidence or lack of evidence which leaves in the minds of the jurors as reasonable persons, a reasonable doubt as to the defendant's guilt as to any particular charge, then the defendant must be given the benefit of that doubt . . . .

"It necessarily follows that if the facts point equally in two separate directions, one way towards innocence and the other way towards guilt, then it must be given that direction which is towards innocence because to satisfy the burden of proving guilt beyond a reasonable doubt, it is incumbent upon the State to negate every supposition which is reasonable or probable.

"If therefore you can, with reason, reconcile all the facts proved with any reasonable theory consistent with the defendant's innocence, then you cannot find him guilty."