**Olga RYDER, Plaintiff,**

v.

**Natasha PUCILLO, Defendant.**

**Civil Action No. 3–06–cv–391 (JCH).**

United States District Court,
D. Connecticut.

Sept. 27, 2007.

John R. Williams, New Haven, CT, for Plaintiff.

Alan Raymond Dembiczak, Jeffrey E. Potter, Howd & Ludorf, Hartford, CT, for Defendant.

## RULING RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 38)

JANET C. HALL, District Judge.

The plaintiff, Olga Ryder, brings this action against defendant, Officer Natasha Pucillo, for violation of her rights under the Fourth, Eighth and Fourteenth Amendments to the United States Constitution pursuant to Title 42 § 1983, and under the common law of the State of Connecticut. Ryder complains that her rights were violated when Pucillo falsely arrested her, set an unreasonable and excessive bail for her release, falsely imprisoned her, and maliciously prosecuted her in the course of an arrest for driving a motor vehicle while under the influence of drugs or alcohol.[1] *See* Complaint (Doc. No. 1). Pucillo moves the court for summary judgment against all of Ryder's claims.

## I. FACTUAL BACKGROUND[2]

Officer Pucillo arrested Ryder on the night of March 18, 2005. Ryder had been at Archie Moore's that night between the hours of about eight and ten. While there she ate a meal and consumed one beer. She ordered a second beer but drank only two or three sips before leaving. Officer Pucillo first saw Ryder when Ryder was driving her mini-van on North Main Street in the Town of Wallingford, Connecticut.

Officer Pucillo began to follow Ryder because of a dispatch the officer had received of a mini-van leaving the scene of a theft in the area. Officer Pucillo followed as Ryder turned west onto Church Street. At the corner of Church Street and North Whittlesley Avenue, Officer Pucillo claims that she saw Ryder stop at the intersection in the middle of her lane, despite the fact that there was no stop sign or hazard present. Def.'s 56(a)(1) Stat. at ¶¶ 16–7 (Doc. No. 38). Ryder disputes that she stopped at the intersection, and testified that she merely "slowed down almost to a stop" to determine if North Whittlesley Avenue was a one-way street. *See* Pl.'s 56(a)(2) Stat. at ¶¶ 23–4 (Doc. No. 39); Ryder Depo. at 71, Def.'s Mot. for Summ. Judg., Ex. C (Doc. No. 38). Officer Pucillo

---

1. Ryder initially claimed that Officer Pucillo "set an unreasonable and excessive bail bond" against her. Complaint, § 13 (Doc. No. 1). However, because Ryder does not address this claim in her Opposition to the Motion for Summary Judgment, the court deems that she has abandoned it and grants Summary Judgment as to that claim. *See* Pl.'s Mem. in Opp. (Doc. No. 39).

2. The facts are those agreed to by the parties unless otherwise noted.

continued to follow Ryder as she continued down Church Street and made a left turn at North Orchard Street. Officer Pucillo states that Ryder did not stop for the stop sign at that intersection; Ryder contends that she "tapped her brake" but "didn't stop for more than a second." *See* Pl.'s 56(a)(2) Stat. at ¶¶ 16–7; Ryder Depo. at 71,[3] Def.'s Mot. for Summ. Judg., Ex. C (Doc. No. 38).

Officer Pucillo stopped Ryder on North Orchard Street and walked up to the driver's side of Ryder's car. She found that Ryder had opened the window three inches; she asked Ryder to open the window further, and Ryder opened the window another three inches. Officer Pucillo reports that Ryder's eyes were "very red, glossy and droopy" and not open to the extent they would normally be open; Ryder disputes that her eyes were in this condition. Def.'s 56(a)(1) Stat. at ¶¶ 30–1; Pl.'s 56(a)(2) Stat. at ¶¶ 30–1.[4] Officer Pucillo then told Ryder that she had stopped her because she had failed to obey a stop sign. Officer Pucillo claims that Ryder said, "I must not have seen the stop sign," though Ryder does not recall whether she said this. Officer Pucillo smelled alcohol when talking to Ryder; Ryder denies that this was possible.

Officer Pucillo then asked Ryder for her license, registration, and proof of insurance. Officer Pucillo noted that Ryder dropped her license in the van's center console while gathering these documents. After checking the licence and registration, Officer Pucillo returned to the van. She asked Ryder how much she had had to drink, and Ryder responded that she had had "two beers at Archie Moore's." Officer Pucillo then asked Ryder to step out of the van to conduct field sobriety tests.

First, Officer Pucillo administered the "horizontal gaze nystagmus test," for which Officer Pucillo told Ryder to keep her head still and to follow a small light with her eyes as Pucillo moved it in front of her face.[5] Officer Pucillo had to remind Ryder not to move her head twice during the test. Officer Pucillo also states that Ryder had nystagmus present for both of her eyes at maximum deviation and prior to the onset of 45 degrees; Ryder denies that this was true. Def.'s 56(a)(1) Stat. at ¶¶ 54–6; Pl.'s 56(a)(2) Stat. at ¶¶ 54–6 citing Arrest Video, Def.'s 56(a)(1) Stat., Ex. F and Transcript of Court Proceeding, Def.'s 56(a)(1) Stat., Ex. K at 0.[6]

---

**3.** Ryder denies Officer Pucillo's statement that she "completely disregarded the stop sign." Def.'s 56(a)(1) Stat. at ¶ 24 and Pl.'s 56(a)(2) Stat. at ¶ 24. Her basis for that denial is pages 74–77 of her deposition. Pl.'s 56(a)(2) Stat. at ¶ 24. Officer Pucillo provided pages 74 and 77 of Ryder's deposition (Def.'s 56(a)(1) Stat., Ex. C), but Ryder has not provided pages 75 or 76.

**4.** With regard to the condition of her eyes, no evidence other than the testimony of Ryder and Officer Pucillo is offered. Given that Ryder does not offer evidence as to when she last looked in the mirror and saw her eyes, the court does not find that she created an issue of material fact regarding their condition.

**5.** The "horizontal gaze nystagmus" test measures the extent to which a person's eyes jerk as they follow an object moving from one side of the person's field of vision to the other. The test is premised on the understanding that, whereas everyone's eyes exhibit some jerking while turning to the side, when the subject is intoxicated "the onset of the jerking occurs after fewer degrees of turning, and the jerking at more extreme angles becomes more distinct." *Pennsylvania v. Muniz*, 496 U.S. 582, 585, 110 S.Ct. 2638, 110 L.Ed.2d 528 (1990)(quoting 1 R. Erwin et al., Defense of Drunk Driving Cases § 8A.99, ¶. 8A–43, 8A–45 (1989)).

**6.** The video shows head movement; as to Ryder's other denials, there is no basis for them; Ryder could not observe her own eye movement. Arrest Video, Def.'s 56(a)(1) Stat., Ex. F.

Second, Officer Pucillo administered the "walk-and-turn test." Officer Pucillo explained to Ryder that she was to take nine steps in a "heel-to-toe fashion" along an imaginary line, turn, and take nine steps back, counting aloud with each step and keeping her arms at her sides; she then demonstrated the test for Ryder. Ryder began the test, but lost her balance in the starting position. When she continued, she raised her arms and kept them raised during the entire test. She also stopped for a moment after making the turn.

Finally, Officer Pucillo administered the "one-leg stand test." She instructed Ryder to stand with her hands at her sides, to choose one foot and to raise it six inches off the ground. She further instructed Ryder to look at the raised foot, keep her toe pointed, and count aloud "one-one-thousand, two-one-thousand" during the test. While performing the test, Ryder wobbled from side to side, lifted her arms for balance and put her foot down two times. After reaching four-one-thousand, Ryder informed Officer Pucillo that she could not perform the test and did not wish to try again. She said, "I can't do it when I haven't had any beer ... I'm not able to do it now."

At the conclusion of the field sobriety tests, Officer Pucillo arrested Ryder, charging her with driving under the influence of alcohol or drugs in violation of C.G.S.A. § 14–227a, and for failing to stop at a stop sign in violation of C.G.S.A. § 14–301. She then transported Ryder to the police station for booking. On May 4, 2005, Ryder appeared in Superior Court where the charges were nolle based on the fact that Ryder's blood alcohol level, when tested after the arrest, was well below the legal limit.

## II. STANDARD OF REVIEW

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgement as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *White v. ABCO Engineering Corp.*, 221 F.3d 293, 300 (2d Cir.2000). Once the moving party has met its burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505, and present such evidence as would allow a jury to find in his favor in order to defeat the motion. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir.2000).

In assessing the record, the trial court must resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Graham*, 230 F.3d at 38. "This remedy that precludes a trial is properly granted only when no rational finder of fact could find in favor of the non-moving party." *Carlton*, 202 F.3d at 134. "When reasonable persons, applying the proper legal standards, could differ in their responses to the question" raised on the basis of the evidence presented, the question must be left to the jury. *Sologub v. City of New York*, 202 F.3d 175, 178 (2d Cir.2000).

## III. DISCUSSION

### A. Reasonable Suspicion to Stop

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. This protection applies to people stopped by the police while driving because "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons'

within the meaning of this provision." *Whren v. United States,* 517 U.S. 806, 809–10, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

However, the Fourth Amendment requirement of reasonableness for brief investigatory stops is less than probable cause; such a stop is reasonable if "the officer's action is supported by a reasonable suspicion to believe that criminal activity may be afoot." *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)(internal quotations omitted). Courts reviewing the reasonableness of a stop must look at the "totality of the circumstances" to determine if the officer had a "particularized and objective basis" for suspecting legal wrongdoing. *Id.* Such an inquiry accounts for the fact that officers "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* (internal quotations omitted). Furthermore, such a stop is reasonable when an officer has probable cause to believe that a driver has violated the traffic code, even if such a stop is only a pretext to investigate for other crimes. *Whren,* 517 U.S. at 812–3, 116 S.Ct. 1769 (internal quotations omitted).

Officer Pucillo argues that she had reasonable suspicion to stop Ryder's car based on the totality of the circumstances. Def.'s Mem. at 14. Specifically, she asserts that she initially followed Ryder's van because she had received a dispatch regarding a shoplifter leaving a nearby store in a mini-van. *Id.* at 15. She observed Ryder stop in the middle of her lane without a stop sign or hazard present, and then saw Ryder turn through an intersection without stopping at a stop sign. *Id.*

While Ryder contests these last two assertions, the evidence she offers fails to create an issue of material fact as to whether she stopped in the middle of her lane or ran a stop sign. Pl.'s 56(a)(2) Stat. at B.¶¶ 1–2 (Doc. No. 39); Ryder Depo. at 71–77 [7], Ex. C. to Def.'s Mot. for Summ. Judg. (Doc. No. 38). Ryder states that rather than stopping at the stop sign, she "slowed down almost to a stop." Ryder Depo. at 71. The court finds that the distinction between stopping and slowing down "almost to a stop" does not raise a material issue of fact, especially in light of the fact that she did not dispute that her "almost stop" was in the middle of her lane of traffic. Similarly, in contesting that she failed to stop at the stop sign, Ryder stated: "... I saw the stop sign and I slowed, and I think I just kind of didn't stop for more than a second. I tapped my brake, and then I saw that I could make a turn...." Ryder Depo. at 74.[8] This testimony that Ryder "tapped" her brake likewise fails to raise a material issue with Officer Pucillo's version of events that Ryder failed to stop, such that a jury could determine that Officer Pucillo did not observe Ryder failing to stop at the stop sign.

The court concludes that Ryder has failed to show that there is an issue of material fact on which a reasonable jury could conclude that Pucillo did not observe Ryder essentially stop in the middle of her lane and then later fail to stop at a stop sign. Based on this evidence of unusual,

---

**7.** Ryder cites her deposition testimony at pages 74–77 in support of her assertion that she did not go through the stop sign. Pl.'s 56(a)(2) Stat. at § B, ¶ 1. *See* note 3, *supra.*

**8.** The court notes that Connecticut motor vehicle law requires that "[t]he driver of a vehicle shall stop in obedience to a stop sign...." C.G.S.A. § 14–301(c).

and likely unlawful,[9] driving, the court finds that under the totality of the circumstances Officer Pucillo had a "particularized and objective basis" to form a reasonable suspicion that Ryder may have been driving under the influence of alcohol or drugs.

### B. Probable Cause to Arrest

█ Having determined that Officer Pucillo had reasonable suspicion to stop Ryder, the inquiry turns to the constitutionality of Ryder's arrest. A formal arrest must be supported by probable cause. *See United States v. Tehrani*, 49 F.3d 54, 58 (2d Cir.1995). To prevail on her section 1983 claim against Officer Pucillo, then, Ryder must show that Officer Pucillo did not have probable cause to arrest her. *See Singer v. Fulton*, 63 F.3d 110, 118 (2d Cir.1995); *see also Bernard v. United States*, 25 F.3d 98, 103 (2d Cir.1994). Probable cause exists when the officers determine, at the moment of the arrest, that, "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Beck v. State of Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). In determining whether the officer had probable cause, the court is to consider the facts available to the officer immediately before and at the time of arrest. *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir.2006). "Courts should look to the 'totality of the circumstances' and 'must be aware that probable cause is a fluid concept—turning

on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.' " *Id.* (citations omitted). While the officer's observations do not need to be correct, the officer's reliance on these observations must be reasonable based on the circumstances. *See Bernard*, 25 F.3d at 103.

█ As a preliminary matter, the court finds that the same reasonable suspicion Officer Pucillo had that Ryder was driving under the influence of alcohol was a sufficient basis for asking Ryder to exit the vehicle to test her sobriety. *See State v. Vogele*, 2004 WL 2284197 (Conn.Super.) at *5 (2004)("Roadside sobriety tests that do not involve long delay or unreasonable intrusion, although searches under the fourth amendment, may be justified by an officer's reasonable suspicion.")(quoting *State v. Lamme*, 19 Conn.App. 594, 600, 563 A.2d 1372 (1989), *aff'd*, 216 Conn. 172, 579 A.2d 484 (1990)). What is more, after stopping Ryder, but before asking her to perform the field sobriety tests, Officer Pucillo had witnessed her driving which, even considering only undisputed facts, raised some question, and had also seen Ryder drop her licence in the console, objective and reasonable facts that could have further enhanced Officer Pucillo's reasonable suspicion that Ryder was driving under the influence of drugs or alcohol. Def.'s Mem. at 3.

█ Officer Pucillo argues that given the totality of the circumstances, she had probable cause to arrest Ryder. The court agrees. Officer Pucillo asserts, and,

---

**9.** Officer Pucillo asserts only that the stop was reasonable because she had reasonable suspicion that Ryder was driving under the influence of alcohol or other substances. Def.'s Mem. at 15. However, the court notes that the stop would have been reasonable based solely on Officer Pucillo's belief that a traffic violation had occurred, even if the traffic stop had only been a pretext to further investigate Ryder's sobriety. *Whren*, 517 U.S. at 810, 116 S.Ct. 1769. Officer Pucillo did, in fact, issue Ryder a ticket for failure to stop at a stop sign. Def.'s 56(a)(1) Stat. at ¶ 83 and Uniform Arrest Report, Ex. I.

with one small exception, Ryder does not contest,[10] that Ryder failed all three of the field sobriety tests conducted. The video of the arrest corroborates that Ryder failed all three tests. *See* Arrest Video, Pl.'s 56(a)(1) Stat., Ex. F. Ryder's performance of the field sobriety tests, in conjunction with the circumstances surrounding the stop, were sufficient to establish probable cause to arrest her.[11] *See e.g. Clynch v. Chapman,* 285 F.Supp.2d 213, 226 (D.Conn.2003)(finding no reasonable jury could find lack of probable cause despite plaintiff's assertion that he passed the first field sobriety eye test where he failed the other two field sobriety tests and had other indicia of intoxication including smell of alcohol and admission of recent consumption of alcohol).

Concluding that no reasonable jury could review the facts before the court and find that Officer Pucillo did not have probable cause to arrest Ryder, Officer Pucillo's Motion for Summary Judgment as to Ryder's false arrest charge is granted. Furthermore, because Ryder's complaints about false imprisonment and malicious prosecution are based solely on the validity of her arrest, the court grants Officer Pucillo's Motion for Summary Judgment as to those claims as well.

**10.** Ryder denies Officer Pucillo assertion that there was "nystagmus present" at maximum deviation and prior to the onset of 45 degrees for each eye. *See* Def.'s 56(a)(1) Stat. at ¶¶ 53–6; Pl.'s 56(a)(2) Stat. at ¶¶ 53–6. However, the dispute over one aspect of one of the three tests administered is not sufficient to create an issue of material fact as to whether Ryder failed the field sobriety tests because the determination is made on the totality of the circumstances. Furthermore, in support of her position, Ryder offers only the video evidence, from which it is not possible to determine whether or not there was nystagmus present. See Arrest Video, Pl.'s 56(a)(1) Stat., Ex. F; footnote 4 supra at 3–4.

**11.** Ryder includes in her statement of facts that the charge against her was dropped be-

## IV. CONCLUSION

For the forgoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 38) is GRANTED.

**SO ORDERED.**

cause a subsequent blood alcohol test proved that the level of alcohol in her body was "well below the legal limit." Pl.'s 56(a)(2) Stat. at 7. However, the court notes that the results of Ryder's blood alcohol test are irrelevant to the question at issue, which was whether Officer Pucillo had probable cause to arrest her. Furthermore, Ryder's blood alcohol level would not be dispositive of her guilt in any event because, under Connecticut law, a person may be found guilty of driving under the influence of alcohol either on the basis of blood alcohol level or behavior indicating intoxication. *See State v. Kirsch,* 263 Conn. 390, 408, 820 A.2d 236; C.G.S.A. § 14–227a(a).