# STATE OF CONNECTICUT *v.* MATTHEW MCNALLY IV
## (13226)

O'Connell, Spear and Hennessy, Js.

*(One judge dissenting)*

Argued May 2—decision released September 19, 1995

*Burton M. Weinstein,* for the appellant (defendant).

*Carolyn K. Longstreth,* assistant state's attorney, with whom, were *Catherine Brannelly Austin,* assistant state's attorney, and, on the brief, *Walter D. Flanagan,* state's attorney, and for the appellee (state).

SPEAR, J. The defendant appeals from the judgment of conviction of assault in the third degree in violation of General Statutes § 53a-61 (a) (1).[1] On appeal, the defendant claims that the trial court improperly (1) denied his motion for judgment of acquittal because the state failed to produce sufficient evidence to establish beyond a reasonable doubt that the defendant committed the assault, (2) excluded expert opinion testimony as to the intoxication of certain witnesses, and (3) excluded evidence concerning the victim's civil action against the defendant's father. We affirm the judgment of the trial court.

Although the evidence was hotly disputed, the jury reasonably could have found the following facts. On January 23, 1992, the victim, Michael Draxdorf, went to a bar in Danbury with two friends. They remained at this bar for approximately four hours, during which time they consumed between three and four pitchers of beer. They left the bar around midnight and went to McNally's Pub, where they were denied admission because they refused to pay the cover charge. The victim, however, was allowed to enter the premises to use the men's room. While in the men's room, the victim lost his balance and accidentally broke a window. The victim asked one of the doormen to summon the man-

---

[1] General Statutes § 53a-61 (a) provides in relevant part: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person . . . ."

ager so that he could explain what had happened. The doorman went to the bar and spoke with the defendant, Matthew McNally IV. After speaking with the doorman, the defendant went into the men's room. He then approached the victim, yelling, "You broke my window," and punched the victim. The victim and his two companions, James Manaforte and Frank Neves, were pushed out the door and attacked by patrons of McNally's Pub. The jury convicted the defendant of assault in the third degree, and this appeal ensued.

I

The defendant first claims that the trial court improperly denied his motion for judgment of acquittal. In support of this claim, the defendant argues that the state failed to produce sufficient evidence to establish beyond a reasonable doubt that it was the defendant who assaulted the victim. We disagree.

We review a sufficiency of the evidence claim by applying a well established two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Greenfield*, 228 Conn. 62, 76, 634 A.2d 879 (1993). It is not our function in this review to retry the case or pass on the credibility of witnesses. *State* v. *Johnson*, 26 Conn. App. 433, 436, 602 A.2d 36, cert. denied, 221 Conn. 916, 603 A.2d 747 (1992). Furthermore, it is axiomatic that in the course of this review "[w]e do not sit as a [seventh] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. . . . Rather, we must defer to the jury's assessment of the credibility of the witnesses based on

its firsthand observation of their conduct, demeanor and attitude." (Citations omitted; internal quotation marks omitted.) *State* v. *White*, 229 Conn. 125, 142–43, 640 A.2d 572 (1994).

Manaforte, a companion of the victim, testified that he saw the defendant punch the victim and made an in-court identification of the defendant as the assailant. The victim and Neves, also a companion of the victim, both described the assailant by age, build and hair color. Their testimony enabled the jurors to compare the descriptions of the assailant to the defendant seated before them. The jury was entitled to reject the defendant's argument that Manaforte was too intoxicated to make a reliable identification. Furthermore, it was within the province of the jury to determine that Manaforte, Neves and the victim were more credible than the defendant and his father, who had testified that the victim was the aggressor and that the defendant did not punch the victim. As "we must defer to the jury's assessment of the credibility of the witnesses"; id., 143; we conclude that there was sufficient evidence from which the jury reasonably could have determined that the defendant was the person who assaulted the victim. Therefore, the defendant's sufficiency of the evidence claim must fail.

II

The defendant next argues that the trial court improperly excluded expert opinion testimony that the victim and his companions were intoxicated at the time of the incident. We are not persuaded by the defendant's arguments.

A

The defendant challenges the trial court's ruling that excluded the following question asked of Sergeant Dan-

iel Mulvey[2] of the Danbury police department by defense counsel: "[W]ere you able to observe . . . whether or not based on your experience and training as a police officer, [Manaforte] appeared to you to be intoxicated or impaired when you interviewed him at the hospital that evening?" The state objected to the question as leading, and the objection was sustained by the court.

In his brief, the defendant argues that the question was not leading and, therefore, should have been allowed. "A question is leading if it suggests an answer in accord with the examiner's view of the matter rather than calling for an expression of the witness's observations . . . . C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.) § 7.12.1, p. 159." (Internal quotation marks omitted.) *State* v. *Russell*, 29 Conn. App. 59, 67, 612 A.2d 809, cert. denied, 224 Conn. 908, 615 A.2d 1049 (1992).

In reviewing whether a trial court has properly determined that a question is leading, our Supreme Court has held that "[t]he trial court's rulings on leading questions must stand unless prejudice has resulted from their admission." Id., 67–68. The defendant was not prejudiced by the court's ruling that the question was leading because he subsequently was able to elicit testimony from Mulvey regarding Manaforte's intoxication. Specifically, Mulvey testified that Manaforte's speech was clear but his eyes were bloodshot. He further testified that consuming three two quart pitchers of beer would impair one's memory. Therefore, even though the defendant was not allowed to ask Mulvey if he believed that Manaforte was intoxicated, he was allowed to ask other questions regarding Manaforte's intoxication. Consequently no prejudice resulted from the trial court's decision to sustain the objection to the question as leading.

---

[2] Mulvey investigated the victim's complaint and interviewed the victim and his companions.

## B

The defendant asserts that he, as a police officer, should have been allowed to give his expert opinion regarding the intoxication of the victim and his companions at the time of the incident. We disagree.

In reviewing this claim, we adhere to the well established standard that "[t]he trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the error is clear and involves a misconception of the law, its ruling will not be disturbed." *State* v. *Palmer*, 196 Conn. 157, 166, 491 A.2d 1075 (1985).

In this instance, the trial court properly excluded the defendant's expert opinion regarding intoxication because expert testimony is not appropriate when the jury is capable of determining the issue based on its own knowledge and experience. *State* v. *Kemp*, 199 Conn. 473, 477, 507 A.2d 1387 (1986). The defendant correctly points out that a police officer's expert opinion regarding intoxication was ruled admissible evidence in *State* v. *Lamme*, 19 Conn. App. 594, 563 A.2d 1372 (1989), aff'd on other grounds, 216 Conn. 172, 579 A.2d 484 (1990). *Lamme* is distinguishable from this case because in *Lamme* the officer's opinion was based on field sobriety tests and the officer's interpretation of those tests. In this case, however, the witness did not conduct field sobriety tests, but rather relied solely on his observation of the victim and his companions to formulate his opinion.

The expert opinion was properly excluded on the ground that a determination of a person's intoxication based *solely on observation and not on an interpretation of sobriety tests* is within the general knowledge of the jury. The defendant presented ample evidence of the victim's and his companions' consumption of alcohol, as well as their conduct and appearance. On

the basis of this evidence, the jury was able to determine their level of intoxication. The defendant's expert opinion was "a superfluous attempt to put the gloss of expertise, like a bit of frosting, upon inferences which lay persons were equally capable of drawing from the evidence." (Internal quotation marks omitted.) *State* v. *Kemp,* supra, 199 Conn. 478–79.

## III

Lastly, the defendant claims that the trial court improperly excluded testimony from his father concerning the victim's civil action in which the victim named the father as the assailant. The state claims that the testimony was properly excluded because it was hearsay and cumulative, and because any probative value was outweighed by the confusion it would cause the jury.

The following facts are necessary for the disposition of this issue. On cross-examination, the victim acknowledged that he had initiated a civil action against McNally's Pub in which he named the defendant's father as the assailant. The victim was also cross-examined regarding his testimony at a deposition that the father was the assailant. During the direct examination of the father, the defendant's counsel asked: "And that afternoon [at the deposition] . . . did [the victim] identify you as the person who hit him in the nose?" The father answered: "Several times." The court sustained the state's objection on hearsay grounds and ordered the response stricken. The defendant's counsel then asked the father: "Are you a defendant in a civil suit brought by [the victim] claiming that you hit him in the nose?" The father answered: "Yes, I am." The court again sustained the state's objection and stated that it would not allow the defendant's counsel to question the father regarding the victim's identification of the father as the assailant.

This proffered evidence was merely cumulative and its exclusion, therefore, was harmless. The victim personally testified and *admitted* that he had identified the defendant's father as his assailant when he testified at the deposition and that he had sued the defendant's father alleging that the father had assaulted him. This court has held that "the defendant has the burden of proving the harmfulness of any alleged erroneous exclusion of evidence, when, as here, it does not involve a constitutional issue. . . . Although the evidence was relevant to [the defense], it was cumulative. . . . Even if the evidence had been admissible, its exclusion, therefore, could not have been harmful." (Citations omitted.) *State* v. *Pitt*, 28 Conn. App. 825, 833, 612 A.2d 60 (1992). The testimony of the defendant's father would simply have corroborated the victim's own admission, making such testimony not only cumulative but of little or no value to the jury.

The judgment is affirmed.

In this opinion HENNESSY, J., concurred.

O'CONNELL, J., dissenting. I disagree with the portion of the majority opinion relating to opinion evidence concerning the intoxication of the victim and his two companions. I believe the testimony at issue should have been treated as lay opinion testimony, not as expert testimony.

The common law has long recognized intoxication as an exception to the general rule that witnesses may testify only to facts that they have observed and not to their opinions. *Sydleman* v. *Beckwith*, 43 Conn. 9, 12, (1875). It is elementary evidentiary law that any lay witness may testify that a person is intoxicated. *D'Amato* v. *Johnston*, 140 Conn. 54, 58, 97 A.2d 893 (1953); *State* v. *Jones*, 124 Conn. 664, 668–69, 2 A.2d 374 (1938); *State* v. *Katz*, 122 Conn. 439, 442, 189 A. 606

(1937). "The condition of intoxication and its common accompaniments are a matter of general knowledge. The statement that a person is intoxicated is not so much the expression of an opinion as it is the statement of a conclusion drawn from observation." 2 B. Holden & J. Daly, Connecticut Evidence (1988) § 117d (3).

The majority confuses intoxication with the condition of being under the influence of liquor. "To be intoxicated is something more than to be merely under the influence of, or affected to some extent by, liquor." *Sanders* v. *Officers Club of Connecticut, Inc.*, 196 Conn. 341, 349–50, 493 A.2d 184 (1985). Despite the apparently clear language of *Sanders*, a later case from this court leaves it unclear as to whether the legislature intended to create a level of inebriation less than intoxication when it used the expression "under the influence of intoxicating liquor" in General Statutes § 14-227a. *State* v. *McKenna*, 11 Conn. App. 122, 129–32, 525 A.2d 1374, cert. denied, 205 Conn. 806, 531 A.2d 931 (1987). Notwithstanding this uncertainty, the phrase "under the influence of intoxicating liquor" is a statutory term of art of concern to the law only in so far as it relates to the operation of a motor vehicle.

The defendant relies on *State* v. *Lamme*, 19 Conn. App. 594, 563 A.2d 1372 (1989), aff'd on other grounds, 216 Conn. 172, 579 A.2d 484 (1990), but the majority distinguishes the two cases because in *Lamme*, the police officer qualified as an expert when he testified as to the defendant's inebriation based on field sobriety tests administered and interpreted by the officer, and there were no such tests conducted in this case. There was, however, a second police officer involved in *Lamme*, and that officer's testimony as to the defendant's inebriation was admitted as lay opinion because it was based, not on the officer's expertise, but simply on what he had observed. Id., 605. The example of the second officer's testimony is closer to the situation here.

The point I am making is that in the present case no motor vehicle was involved; the defendant[1] sought to give his opinion only as to whether the victim and his companions, who were the state's three key witnesses, were intoxicated, not whether they were under the influence of liquor. As such, his testimony was admissible as lay opinion. Whether he could also have qualified as an expert is irrelevant, as are case authorities concerning motor vehicle operation.

The majority properly states the rule that expert evidence is not appropriate when the jury is capable of determining the issue based on its own knowledge and experience. That rule, however, does not apply to exclude lay opinion evidence of intoxication. Such evidence is admissible under the principle that all relevant evidence is admissible unless specifically excluded by some rule of law. *State* v. *Bryant*, 202 Conn. 676, 688, 523 A.2d 451 (1987). No rule excludes lay opinion of intoxication.

The exclusion of this evidence was prejudicial to the defendant. The identification of the defendant was critical here. The events occurred suddenly and lasted only a few seconds. Whether the state's key witnesses were intoxicated to the extent that their powers of observation and perception might have been dulled or distorted was vital to the defense in this case.

For these reasons, I respectfully dissent from the majority opinion. I would reverse the conviction and grant a new trial.

---

[1] The defendant was a Danbury police officer and the son of the owner of McNally's Pub, where the assault occurred.