# STATE OF CONNECTICUT *v.* JAMES PJURA
## (AC 20150)

Foti, Schaller and Dupont, Js.

Argued September 24, 2001—officially released February 12, 2002

*James O. Ruane*, with whom, on the brief, was *Lori A. McCarthy*, for the appellant (defendant).

*Ronald G. Weller*, assistant state's attorney, with whom, on the brief, were *Eugene Callahan*, state's attorney, and *Robert S. Katz*, former senior assistant state's attorney, for the appellee (state).

*Opinion*

SCHALLER, J. The defendant, James Pjura, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a) (1). The defendant claims that the trial court improperly (1) allowed opinion testimony by a state police trooper that the defendant was under the influence of alcohol and (2) admitted evidence of the horizontal gaze nystagmus (HGN) test. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our disposition of the defendant's appeal. Shortly after midnight on April 26, 1998, Trooper Aaron Huntsman of the Connecticut state police drove his cruiser off to the right side of Interstate 95 to set up a radar post. Just after establishing his position, Huntsman observed the defendant's vehicle traveling in the highway's breakdown lane. The vehicle came within one foot of hitting Huntsman's cruiser. Huntsman turned on his police lights and siren, and began to pursue the defendant. He followed the defendant for one-half mile along the highway and then off an exit. One-quarter mile later, Huntsman managed to force the defendant to stop by boxing his vehicle in between the cruiser and a large rock.

As Huntsman approached the vehicle, the defendant rolled down the window. On the basis of the defendant's appearance, manner and odor, Huntsman suspected

that the defendant was intoxicated. He asked the defendant to get out of the car to perform standard field sobriety tests. The first test Huntsman administered was the HGN. That test assesses a driver's visual ability to track an object smoothly. Huntsman next administered the walk and turn test, which required the defendant to walk heel to toe in a straight line. Last, Huntsman administered the one-leg stand test, in which the defendant had to raise one foot off the ground and count for thirty seconds.

After further observation and a determination that the defendant had failed the three field tests, Huntsman arrested the defendant for operating a vehicle while under the influence of intoxicating liquor. At trial, Huntsman testified, as an expert witness on drunken driving, about his observations and testing of the defendant. The jury returned a verdict of guilty, and the defendant appealed. Additional facts will be set forth as necessary.

I

The defendant first claims that it was improper for the court to allow a state trooper to offer expert testimony as to whether the defendant was intoxicated. The defendant argues that it was improper, first, because the testimony concerned the ultimate issue of fact in the case, and second, because the jury was capable of understanding the subject matter on its own.

A

The defendant argues that it was improper for the court to allow expert testimony as to whether he was intoxicated because that was the ultimate issue in the case. We do not agree.

At the outset, we set forth our standard of review. It is well established that "[t]he trial court has wide discretion in ruling on the admissibility of expert testi-

mony and, unless that discretion has been abused or the error is clear and involves a misconception of the law, its ruling will not be disturbed." (Internal quotation marks omitted.) *State* v. *McNally*, 39 Conn. App. 419, 424, 665 A.2d 137, cert. denied, 235 Conn. 931, 667 A.2d 1269 (1995).

We further note that with regard to expert testimony, our case law states that "[a]n expert witness is not ordinarily permitted to express an opinion on an ultimate issue of fact which is to be decided by the trier of fact. . . . Experts can sometimes give an opinion on an ultimate issue where the trier, in order to make intelligent findings, needs expert assistance on the precise question on which it must pass." (Citations omitted; internal quotation marks omitted.) *State* v. *Lamme*, 19 Conn. App. 594, 603, 563 A.2d 1372 (1989), aff'd, 216 Conn. 172, 579 A.2d 484 (1990).

In *State* v. *Lamme*, supra, 19 Conn. App. 594, we applied that principle to expert testimony concerning a defendant's sobriety when his intoxication was the ultimate issue. The defendant in *Lamme* contended that the trial court improperly admitted a police officer's opinion testimony about intoxication because that was the ultimate issue in the case.[1] Id., 601–602.

The officer in *Lamme* testified that the defendant was driving without his headlights on when he was stopped. Id., 601. The officer also testified that when he approached the defendant's car, he had to bang on the window before the defendant opened it and that there was a strong odor of alcohol in the car. Id. The testimony also related the officer's administration of

[1] Although two police officers testified in *Lamme*, we need only discuss the testimony of the officer who stopped the defendant, administered the field tests and testified about those events. The court admitted the officer's testimony as lay opinion on the intoxication issue. On appeal, however, this court determined that the officer's testimony was that of an expert. We therefore treated his opinion as expert testimony when deciding the case.

field sobriety tests and his interpretation of those tests. Id., 601, 603. Finally, the officer testified that on the basis of his observations and the sobriety tests, he believed that the defendant was intoxicated. Id., 601–602.

Affirming the decision of the trial court, we stated that "[the officer's] testimony, which included a description and interpretation of and conclusions regarding the roadside sobriety tests, was necessary for the jury intelligently to make a finding as to whether the defendant violated General Statutes § 14-227a (a) by '[operating] a motor vehicle while under the influence of intoxicating liquor or any drug or both.' The opinion portion of [the officer's] testimony differed from any other opinion testimony regarding the sobriety of an individual because it was based in great part on knowledge and skill beyond the ken of the average juror." *State* v. *Lamme*, supra, 19 Conn. App. 603–604. We concluded that the officer's testimony in *Lamme* met the previously stated requirement of the trier of fact's needing expert assistance so as to permit the testimony's admission as expert testimony on the ultimate issue of fact. Id., 604.

We discern no significant distinction between the situation in *Lamme* and that in the present case, despite the defendant's argument to the contrary, and are therefore constrained to apply the reasoning of that case. Huntsman testified about events similar to those that occurred in *Lamme* under virtually the same circumstances. Huntsman testified about the initial incident that prompted the pursuit and the pursuit itself. He described his initial interaction with the defendant after he approached the car, as well as the odor of alcohol in the car. He recalled that the defendant could not find his driver's license when asked for it. He related that he smelled alcohol on the defendant's breath and that his eyes were red. He testified that the defendant slurred his speech and had difficulty walking to the rear of the

car to take the sobriety tests. Huntsman also described his administration of the tests and his interpretation of them. As in *Lamme*, Huntsman determined, on the basis of his knowledge, observations and the tests, that the defendant was intoxicated.

We conclude, as we did in *Lamme*, that Huntsman's expert testimony concerning the defendant's intoxication meets the test for the admissibility of expert testimony on the ultimate issue. The testimony consisted of expert assistance on the ultimate issue that was necessary for the trier of fact to make an intelligent finding. The court did not abuse its discretion in admitting the testimony.

B

The defendant also argues that it was improper for the court to allow Huntsman's testimony that the defendant was intoxicated because it provided the jury with an expert opinion on an issue that was within its comprehension and that it could have decided using its common knowledge. The defendant argues that the court improperly permitted the jury to give more weight to Huntsman's opinion than to its knowledge on the issue of the defendant's sobriety.

As previously noted, our standard of review for a challenge to the admissibility of expert testimony is to determine whether the trial court abused its discretion. See *State* v. *McNally*, supra, 39 Conn. App. 424. We further note the long-standing test for the admissibility of expert testimony. "Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to a matter in issue, (2) that skill or knowledge is not common to the average person, and (3) the testimony would be helpful to the court or jury in considering the issues." (Internal quotation marks omitted.) *State* v. *Lamme*, supra, 19 Conn. App. 603.

Before we can properly address the defendant's claim, we must review our existing decisions that address expert testimony on intoxication. In that review, we consider the circumstances under which the three-pronged test for admitting expert testimony is met in the context of police officers testifying about a defendant's intoxication.

In *State* v. *Lamme,* supra, 19 Conn. App. 594, we determined the nature of the officer's testimony in the context of the principal question about expert testimony on the ultimate issue. We noted that despite the trial court's categorization of the officer's testimony as lay opinion, his testimony constituted expert testimony. Id., 602–603. Our analysis of the testimony in *Lamme* is instructive here.

In assessing the officer's testimony in *Lamme,* we first noted his training. The officer had received instruction that provided him with specialized skill and knowledge to assess and determine whether a person is intoxicated. Id., 603–605. We therefore stated that "[the officer's] opinion . . . was based on this training. As such, his opinion qualified as that of an expert and should have been accorded that status." Id., 603.

Although we did not provide detailed analysis for that conclusion, implicit was the idea that because the officer applied the skill and knowledge derived from his training to interpret the field sobriety tests,[2] his testimony met the three-pronged test for expert testimony. That knowledge and skill, which is not common to the layman, allowed the officer to provide assistance

[2] We note that our discussion of the officer's testimony in *Lamme* focused on his interpretation of the field sobriety tests, despite the fact that the officer testified about both his interpretation of the tests and his observations of the defendant. It appears from the decision in *Lamme,* however, that all of the officer's opinion testimony, including his observations of the defendant, was determined to be that of an expert. That will be discussed in greater detail in this opinion.

to the jury in its decision concerning the defendant's intoxication.

We must now examine the implications of our decision in *Lamme* in light of subsequent case law. In *State v. McNally*, supra, 39 Conn. App. 419, the defendant was an off-duty police officer who was charged with assault after an altercation outside a bar. He argued on appeal that the trial court improperly excluded his expert testimony, as a police officer, that the victim was intoxicated at the time of the event. Id., 424.

In affirming the trial court's decision, we stated that "*Lamme* is distinguishable from this case because in *Lamme* the officer's opinion was based on field sobriety tests and the officer's interpretation of those tests. In this case, however, the witness did not conduct field sobriety tests, but rather relied solely on his observation of the victim and his companions to formulate his opinion." Id. We concluded that "[t]he expert opinion was properly excluded on the ground that a determination of a person's intoxication based *solely on observation and not on an interpretation of sobriety tests* is within the general knowledge of the jury." (Emphasis in original.) Id. *McNally* indicates that testimony based solely on observations of another's behavior that might indicate intoxication is not beyond the jury's understanding and therefore does not meet the three-pronged test for admitting expert testimony.

When *Lamme* and *McNally* are read together, we see a clear distinction. Expert testimony is improper if it is based solely on general observations by themselves because in that situation an officer need not invoke or rely on the skill and knowledge garnered from his training. Expert testimony is permissible, however, in the context of an official roadside investigation because in that situation, an officer is required to administer tests and to observe the driver. Those related tasks

require the officer to use his specialized skill and knowledge to determine whether the driver is intoxicated.

The defendant argues further that the trooper's testimony, which included both his general observations and discussion of the field sobriety tests, should not have been admitted as proper expert testimony. The defendant asserts that *McNally* should apply to this situation because the trooper's opinion was based, in part, on his observations and general knowledge of intoxicated people. We are not persuaded.

First, the trooper's opinion was based on more than his general observations. Second, the observations discussed in *McNally* arose in a factual context too remote from those we consider presently. *McNally* concerned an off-duty officer, charged with a crime, who observed a person in a social setting. Here, the trooper observed the defendant in the context of an authorized roadside intoxication investigation.

We conclude that the defendant's claim is governed by *Lamme* rather than by *McNally*. We apply *Lamme* here for two reasons. First, the officer's testimony that was admitted in that case is similar to the testimony in dispute in this case. Second, whereas *McNally* discusses testimony about observations alone, *Lamme* addresses expert testimony that concerns both observations and the interpretation of field tests, as noted in footnote 2.

As we determined in *Lamme*, an officer properly may testify as an expert when his opinion is based on the specialized skill and knowledge he has derived from his training. Specifically, we referred to the application of that specialized knowledge to the interpretation of field sobriety tests in our disposition of that appeal. Because we concluded, however, that all of the officer's testimony constituted expert testimony, we implicitly determined that testimony based on the application of that same skill and knowledge to his observations made

during a roadside investigation is also admissible expert testimony.

The *Lamme* decision recognized, without specifically stating, that in the context of roadside sobriety tests, there is an interrelationship between what the officer observes about the defendant's demeanor and behavior, and how the officer interprets the defendant's performance on the sobriety tests. The roadside investigation must therefore be viewed in light of all the circumstances because the officer's observations generally provide the basis for, and are an integral part of, his decision to field test the driver and his interpretation of the field tests.

When a police officer's opinion testimony involves an overall interpretation of observations and field tests that is based on his skill and knowledge, which is beyond the jury's general knowledge because the officer has special training, that opinion properly may be admitted as his expert opinion. We conclude accordingly that consistent with *Lamme*, a police officer's observations concerning a defendant and his actions, along with the officer's interpretation of field tests, may be admitted as part of the officer's expert opinion testimony when they are interpreted by the officer as an integral part of his opinion.

Although the defendant argues that *State* v. *Gracia*, 51 Conn. App. 4, 17–19, 719 A.2d 1196 (1998), is inconsistent with *Lamme*, we conclude that *Gracia* is inapplicable to this appeal and is not inconsistent with *Lamme* because the issue in *Gracia* was whether a field sobriety test constitutes scientific evidence requiring expert testimony for admission. That, however, is not the question we are now addressing in this case. Rather, we are deciding when expert testimony on intoxication is permissible. Such testimony is admissible whenever a police officer's opinion is based on his skilled and

knowledgeable interpretation of observations and field tests. The holding in *Gracia* that the field test results themselves did not *require* expert testimony as a condition to their admission into evidence; id., 18–19; has no bearing on whether expert interpretation of the tests is admissible.

Our review of the trial transcript in this case indicates that Huntsman testified about both his observations of the defendant and his interpretation of the field sobriety tests. He testified about the entire incident, from the time he began to pursue the defendant to the time of the arrest after the defendant failed the tests.

Huntsman described the defendant's appearance and manner when he first approached the car. He related the smell in the car, the smell of the defendant's breath and the condition of his eyes. He described the defendant's slurred speech and inability to find his driver's license. He testified that when he asked the defendant to get out of the car and walk to the rear for the tests, the defendant had difficulty walking and had to hold onto the car. Huntsman also testified about the tests in detail as well as the defendant's performance of them.

It is clear that Huntsman's opinion as to the defendant's intoxication was the product of his interpretation of those observations and field tests. Specifically, on direct examination, Huntsman was asked: "Based upon your previous training, your experience from what you observed out there on the roadside, the defendant's appearance, his behavior, his performance on the tests . . . do you have an opinion . . . ?" He replied: "I was of the opinion at the time by taking all the facts and circumstances of the case, he was under the influence . . . ."

As we previously concluded, that type of opinion testimony, which is based on all of the circumstances, properly is admitted as that of an expert because it

results from the officer's training, specialized skill and knowledge. It is the result of a continuing interpretative process that Huntsman engaged in from the time he first observed the defendant's vehicle traveling in the breakdown lane until he arrested the defendant.

Because we have determined that Huntsman applied the skill and knowledge from his training to both his observations of the defendant and the field sobriety test results, his testimony properly was admitted as that of an expert. His testimony meets the three prongs of the test reiterated in *Lamme* for the admission of expert opinion because he possessed a special skill and knowledge from his training, it was beyond the jury's knowledge and it allowed Huntsman to provide testimony that was helpful to the jury in deciding the issue at hand. The court did not abuse its discretion in allowing Huntsman to testimony as an expert.

## II

The defendant's second claim is that the court improperly admitted evidence of the HGN test without first requiring the state to meet the criteria for the admission of scientific evidence.[3] We agree, but conclude that the error was harmless.

At the outset, we note our standard of review of a challenge to a trial court's determination of evidentiary matters. "Our standard of review for evidentiary matters allows the trial court great leeway in deciding the

[3] As previously stated, the HGN test assesses a driver's ability to visually track an object smoothly. Huntsman explained that the test is administered by asking the driver to follow a moving object, such as a pen or finger, with his eyes from left to right. The officer holds the object at eye level about twelve inches from the driver's eyes and begins moving it. As the object moves, the officer watches the driver's eyes and checks to see if the eyes smoothly pursue the object and if they jerk at certain points in their movement. The HGN test is used as a field sobriety test because after consuming alcohol, a person's eyes tend to jerk involuntarily as they move from side to side.

admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *State* v. *Russo*, 62 Conn. App. 129, 133, 773 A.2d 965 (2001).

Although this court has decided several appeals concerning HGN testing, *Russo*, our most recent decision, is dispositive of the defendant's claim. In *Russo*, the defendant also was convicted of operating a motor vehicle while under the influence of intoxicating liquor. Id., 130. At trial, the court allowed the arresting officer to testify about the field tests he administered, including the HGN test. Id., 133. On appeal, the defendant challenged the court's decision to admit the HGN test results without first requiring the state to satisfy the criteria for the admission of scientific evidence as set out in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993). *State* v. *Russo*, supra, 62 Conn. App. 131.

In deciding *Russo*, we discussed our previous decision in *State* v. *Merritt*, 36 Conn. App. 76, 647 A.2d 1021 (1994), appeal dismissed, 233 Conn. 302, 659 A.2d 706 (1995), which also involved a trial court's admission of HGN evidence without first requiring the state to meet the criteria for the admission of scientific evidence. Our decision in *Merritt* stated that "the HGN test and its results are based on a scientific principle, namely, that there is a discernable correlation between the increased incidence of and the angle of the onset of nystagmus and alcohol consumption. The mechanics of the HGN test, we further conclude . . . are not within the common knowledge of lay jurors. The reasons underscoring the nature of the HGN test are unfamiliar to jurors, and

a juror would not be in a position to weigh the testimony concerning the HGN test and its results without abandoning common sense and sacrificing independent judgment to the expert's assertions, which are based on understanding the technical aspects of the test. The scientific and theoretical nature of the HGN test and its results has the potential to mislead jurors in the absence of a foundation establishing the general acceptance of the test. The [*Frye* v. *United States*, 293 F. 1013 (D.C. Cir. 1923)] test therefore should be applied to the admission of testimony derived from the HGN test and its results. . . .

"We conclude, therefore, that as a precondition to the admission of testimony concerning HGN testing and results, the party introducing the testimony must establish, pursuant to *Frye*, the general acceptance of the HGN test." (Citation omitted.) *State* v. *Merritt*, supra, 36 Conn. App. 90–91.

Having reviewed *Merritt*, our decision in *Russo* went on to harmonize our state law with federal law. We stated that "[w]hen deciding *Merritt*, however, we also recognized that the United States Supreme Court in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, supra, 509 U.S. 586–89, had adopted as federal law a broader test for the admission of scientific evidence and had held that the rigid rule of *Frye* no longer governed. . . . Nevertheless, we adhered to the *Frye* test in *Merritt* because our Supreme Court had not yet addressed the issue of whether *Daubert* had superseded *Frye* as a matter of state law. . . .

"In 1997, however, our Supreme Court squarely addressed that issue in *State* v. *Porter*, [241 Conn. 57, 66–68, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998)]. It explicitly held that 'the *Daubert* approach should gov-

ern the admissibility of scientific evidence in Connecticut.' . . .

"Contrary to the state's argument that *Porter* overruled *Merritt*, we view it as having modified *Merritt*. Although *Porter* affected the criteria for the admission of scientific evidence reiterated in *Merritt*, it did not affect the primary holding of *Merritt*. Testimony regarding HGN testing is still the type of scientific evidence that may mislead a jury in the absence of a proper foundation. Merely changing the criteria for the admission of scientific evidence has no effect on the primary holding of *Merritt*. Accordingly, we conclude that *Porter* modified *Merritt* so that, prior to admission, testimony regarding HGN testing . . . must comply with the *now* prevailing requirements in Connecticut for the admission of scientific evidence derived from *Daubert*." (Citations omitted; emphasis in original.) *State* v. *Russo*, supra, 62 Conn. App. 135–36.

We then addressed the defendant's claim in *Russo* and stated that "[t]he [trial] court, over the defendant's objection, allowed [the officer] to testify regarding the results of the defendant's HGN test without requiring the state to establish the proper foundation for the admission of scientific evidence as set forth in *Daubert*. Rather than conducting the proper *Daubert* analysis, the court simply disregarded the primary holding of *Merritt* by concluding that HGN testing was not scientific evidence. . . . We conclude, therefore, that the court abused its discretion in admitting [the officer's] testimony regarding the results of the defendant's HGN test without requiring that the state satisfy the criteria for the admission of scientific evidence as set forth in *Daubert*." Id., 136.

The state again raises the issue that we declined to decide in *Russo*. The state invites us to declare that the HGN test has gained general acceptance in the scientific

community. Although the state argues that the decision in *State* v. *Carlson*, 45 Conn. Sup. 461, 720 A.2d 886 (1998), supports that proposition and validates the test, we decline to decide on the basis of *Carlson* whether the HGN test meets the *Daubert* standard for scientific validity. As we noted in *Russo*, we will not determine whether the HGN test meets the *Daubert* criteria when the trial court has not itself specifically ruled on that issue. *State* v. *Russo*, supra, 62 Conn. App. 136 n.5. We stated in *Russo* that the appeal in that case was an inappropriate vehicle by which to examine the validity of the HGN test because the trial court had found that the HGN test was not even a scientific test. Id. Similarly, when ruling on the defendant's motion in limine to bar the HGN test evidence, the court in this case stated only that Huntsman had "testified sufficiently to the court's satisfaction that he's qualified to perform that or render that test . . . ." Because the court did not specifically address whether the HGN test met the scientific validity standard, we decline the state's invitation to rule on whether the HGN test has gained general acceptance in the scientific community.

Before turning our attention to the defendant's claim, we must also first address the state's attempt to distinguish this case from *Merritt* and the trial court's response. The state argued at trial that *Merritt* did not apply to this case because in *Merritt*, the state was attempting to establish a correlation between the HGN results and a specific level of intoxication. The state asserted that contrary to that position, it sought in this case to introduce the HGN evidence only to show that the defendant had consumed alcohol. A reading of the transcript reveals that the court was persuaded by that argument because in its denial of the defendant's motion in limine, it stated that Huntsman could testify as to the administration of the test and his findings, but

that no opinion or evidence as to the level of intoxication would be allowed.

Although *Russo* controls our disposition of this appeal, we review the state's attempt to distinguish this case from *Merritt* because we discussed *Merritt* in *Russo* and because the court's decision on the defendant's motion in limine indicates that the court agreed with the state's position. Although the officer's testimony about the HGN test in *Merritt* did specifically refer to that test in relation to blood alcohol levels, we believe our decision in that appeal applies more broadly than to the specific use of HGN evidence to prove a certain blood alcohol level, and that our decision established that evidence concerning HGN tests, in any form, is scientific and should be treated as such.

In *Merritt*, we stated that "the majority of jurisdictions that grant the admission into evidence of the HGN test and its results allow the test and results only as evidence of intoxication, rather than conclusive proof of intoxication. . . . On the basis of our review of the record, and in accord with the majority of jurisdictions that have addressed this issue, we conclude that the HGN test and its results are based on a scientific principle . . . ." (Citation omitted.) *State* v. *Merritt*, supra, 36 Conn. App. 90. Because we read *Merritt* broadly, we conclude that the present case is not distinguishable from *Merritt*. Additionally, because we do not agree with the state's narrow reading of *Merritt*, we conclude that the specific nature of the HGN testimony is irrelevant.

We now address the defendant's claim and apply the law as stated in *Russo*. In light of that decision, we conclude that the evidence before the trial court was insufficient to establish the scientific validity of the HGN test. The court improperly admitted Huntsman's testimony about the HGN test without first requiring

the state to establish the proper foundation for the admission of scientific evidence as set forth in *Daubert*.

That, however, does not end our inquiry into this issue. We must also determine if the court's ruling was harmless. We first note our standard of review in making that determination. It is well settled that "[w]here an evidentiary ruling has been found to be incorrect, but the improper ruling . . . does not implicate a constitutional right of the defendant, the burden rests on the defendant to establish the harmfulness of the claimed impropriety. . . . In order to establish the harmfulness of a trial court ruling, the defendant must show that it is more probable than not that the improper action affected the result. . . . The question is whether the trial court's error was so prejudicial as to deprive the defendant of a fair trial, or, stated another way, was the court's ruling, though erroneous, likely to affect the result?" (Citations omitted; internal quotation marks omitted.) *State* v. *Russo*, supra, 62 Conn. App. 137.

In the present case, we cannot conclude that the court's admission of the HGN test affected the outcome of the defendant's trial. The jury heard a plethora of other evidence from which it could have determined that the defendant was intoxicated.

As previously stated, Huntsman testified about the near collision when the defendant was driving in the breakdown lane, as well as the three-quarter mile pursuit. He also testified about the odor of alcohol both in the car and on the defendant's breath. He stated that the defendant was unable to find his driver's license and had bloodshot eyes and slurred speech. He also described how the defendant had to use the car to keep his balance as he walked to its rear to take the field tests. Huntsman also described how the defendant failed the other two field tests, noting that he had to stop the walk and turn test because the defendant was so unbal-

anced that Huntsman feared that the defendant might fall and injure himself. He also testified that the defendant could manage to stay only on one foot in the one-leg stand test for ten seconds. Huntsman further testified that at the police barracks, the defendant refused to submit to a breath test. Additionally, another trooper at the barracks testified, as Huntsman had, that the defendant smelled of alcohol, had red and glassy eyes, and was slurring his speech. On the basis of all the evidence that the jury heard, we cannot conclude that absent the HGN test evidence, the jury would have found differently.

The judgment is affirmed.

In this opinion the other judges concurred.