## STATE OF CONNECTICUT *v.* ROBERT E. BALBI
## (AC 24493)

DiPentima, McLachlan and McDonald, Js.

---

Argued January 6—officially released June 14, 2005

*David T. Grudberg*, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Walter D. Flanagan*, state's attorney, and *David M. Holzbach*, senior assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Robert E. Balbi, appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes (Rev. to 2001) § 14-227a (a) (1), as amended by Public Acts, Spec. Sess., May, 2002, No. 02-01, § 108, and, after a trial to the court, of having previously been convicted of that crime. The defendant's principal claim on appeal is that the trial court improperly permitted testimony concerning a horizontal gaze nystagmus test without first conducting a hearing pursuant to *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997) (en banc), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998), to determine the reliability of the test.[1] We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On November 30, 2002, at approximately 10:30 p.m., Officer William Hull of the Newtown police department observed the defendant driving in an erratic manner on Route 302. Suspecting that the driver might be intoxicated, Hull activated his vehicle's overhead lights and initiated a traffic stop. Hull approached the defendant's vehicle and asked the defendant for his driver's license, registration and proof of insurance. The defendant fumbled through some paperwork and handed to Hull the driver's license and two expired insurance cards. Hull informed the defendant that the insurance cards were expired, to which the defendant replied,

---

[1] The defendant also raises on appeal the additional claim that the court's admission of horizontal gaze nystagmus evidence violated his right to confrontation under the sixth amendment to the United States constitution and article first, § 8, of the constitution of Connecticut. Because we conclude that it was not improper to admit horizontal gaze nystagmus evidence without first conducting a *Porter* hearing to determine the test's reliability, this court already having established its reliability as a matter of law in a previous case, the defendant's right to confrontation is not implicated.

"You've got to be shitting me." Asked whether he had any medical conditions or was taking any medications, the defendant replied, "no," but stated that he was taking diet pills.

Hull then asked the defendant where he was going and how much he had had to drink. The defendant replied that he was going home to Ridgefield and that he had consumed two beers. A short while later, Hull again asked the defendant the same two questions. This time the defendant responded that he was going home to Bethel and had consumed four beers. During those interactions, Hull observed that the defendant's speech was slurred and that his eyes were bloodshot and glossy. Hull also detected the odor of alcohol on the defendant's breath.

On the basis of those interactions, Hull concluded that the defendant was intoxicated and, in accordance with department procedure, called for a backup officer so that he could administer field sobriety tests. Upon the arrival of Officer Michael Edis, Hull asked the defendant to step out of his vehicle. While performing this task, the defendant appeared somewhat unsteady. When Hull explained to the defendant that he was going to perform several field sobriety tests on him, the defendant responded that he would perform only the horizontal gaze nystagmus test and refused to participate in any other test because he "doesn't have faith in them."

The horizontal gaze nystagmus test is one of several field sobriety tests recommended by the National Highway Traffic Safety Administration to assist law enforcement in determining whether the operator of a motor vehicle is under the influence of alcohol. *State* v. *Dahood*, 148 N.H. 723, 728, 814 A.2d 159 (2002); see also annot., 60 A.L.R.4th 1129 (1988). "Nystagmus is the inability of the eyes to maintain visual fixation on a stimulus when the eyes are turned to the side, often

resulting in a lateral jerking of the eyeball. . . . The premise of the horizontal gaze nystagmus test is that as alcohol consumption increases, the closer to the midline of the nose the onset of nytagmus occurs. To administer the test, the officer positions a stimulus approximately twelve to eighteen inches away from and slightly above the subject's eyes. The stimulus, usually a pen or the officer's finger, is then moved slowly from the midline of the nose to maximum deviation, the farthest lateral point to which the eyes can move to either side. The officer observes the subject's eyes as [the subject tracks the stimulus. The officer] looks for six clues, three for each eye, to determine whether the subject passes or fails the test. The officer looks for (1) the inability of each eye to track movement smoothly, (2) pronounced nystagmus at maximum deviation and (3) the onset of nystagmus at an angle less than forty-five degrees in relation to the center point. A finding of four clues indicates failure of the test and is a sign of intoxication." (Citations omitted.) *State* v. *Commins*, 83 Conn. App. 496, 499, 850 A.2d 1074, cert. granted on other grounds, 271 Conn. 905, 859 A.2d 564 (2004).

Hull testified that the defendant failed to smoothly track movement of the stimulus and that the onset of nystagmus occurred at an angle less than forty-five degrees to the center point. On the basis of his observations and the defendant's performance on the horizontal gaze nystagmus test, Hull placed the defendant under arrest and transported him to the Newtown police station, where the defendant refused to submit to a breath test. The defendant subsequently was charged by information with operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a (a) (1). The defendant also was charged in the second part of the information with being a subsequent offender in violation of § 14-227a (g).

Prior to trial, the defendant filed a motion to suppress the results of the horizontal gaze nystagmus test and requested a *Porter* hearing to determine the scientific reliability of the test. The state countered that a *Porter* hearing was not necessary in this case because the court previously had considered the reliability of horizontal gaze nystagmus evidence in *Porter* hearings conducted in prior cases and could take judicial notice of its determinations therein that such evidence is reliable and satisfies *Porter*.

The court ruled as follows: "I'm going to take judicial notice of my own decision in the case of *State* v. *Knipe* [Superior Court, judicial district of Danbury, Docket No. MV01-0331219]. The state submitted a transcript of the *Porter* hearing in that case, and I'm going to ask that that be marked as a court's exhibit. And, I'm also going to rely on *State* v. *Carlson* [45 Conn. Sup. 461, 720 A.2d 886 (1998)] . . . . [In] *Knipe* as well as in *Carlson*, the court made a determination that the [horizontal gaze nystagmus] test was a scientifically reliable and relevant test. And, in this case, the officer testified, and I've qualified him as an expert. The defense had an opportunity to cross-examine or rather to voir dire, and you can still voir dire if you'd like, in front of the jury, but I'm going to make the determination that he's qualified to administer the test. And, I don't think its necessary to, under the circumstances here, to go through an additional *Porter* hearing."

On June 11, 2003, the jury found the defendant guilty as charged. The defendant thereafter waived his right to a jury trial on the second part of the information and was found guilty by the court of being a subsequent offender. On July 24, 2003, the court sentenced the defendant to two years incarceration, execution suspended after six months, and five years probation. This appeal followed.

The defendant claims that the court improperly admitted into evidence testimony of the horizontal gaze nystagmus test without first conducting a *Porter* hearing to establish the test's reliability. We disagree.[2]

"Our standard of review for evidentiary matters allows the trial court great leeway in deciding the admissibility of evidence. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done. . . . The exercise of such discretion is not to be disturbed unless it has been abused or the error is clear and involves a misconception of the law." (Internal quotation marks omitted.) *State* v. *Commins*, supra, 83 Conn. App. 502.

At the urging of counsel and after reviewing the progression of the relevant case law, we now make clear our position regarding the foundational requirements for the admission of horizontal gaze nystagmus evidence.

We have consistently expressed our view that horizontal gaze nystagmus evidence is the type of scientific evidence that may mislead a jury in the absence of a proper foundation. In *State* v. *Merritt*, 36 Conn. App. 76, 647 A.2d 1021 (1994), appeal dismissed, 233 Conn. 302, 659 A.2d 706 (1995), this court enunciated the three part test that must be satisfied before such evidence is admissible. That test requires that the state (1) satisfy the criteria for admission of scientific evidence, (2) lay a proper foundation with regard to the qualifications of the individual administering the test and (3) demon-

---

[2] We note that although the record in this matter does not contain either a memorandum of decision or a signed transcript concerning the court's ruling denying the defendant's motion to suppress, as required by Practice Book § 64-1, we nevertheless review the defendant's claim because he has filed an unsigned transcript that contains "a sufficiently detailed and concise statement of the trial court's findings." *Bank of America, FSB* v. *Franco*, 57 Conn. App. 688, 691 n.1, 751 A.2d 394 (2000).

strate that the test was conducted in accordance with relevant procedures. Id., 91.

At the time *Merritt* was decided in 1994, the prevailing standard for the admission of scientific evidence was the test enunciated in *Frye* v. *United States*, 293 F. 1013 (D.C. Cir. 1923), which required that the party seeking to introduce the evidence of a scientific method or test establish its general acceptance in the scientific community. Seven years after *Merritt*, we decided *State* v. *Russo*, 62 Conn. App. 129, 134–36, 773 A.2d 965 (2001), in which we modified our holding in *Merritt* to harmonize it with our Supreme Court's decision in *State* v. *Porter*, supra, 241 Conn. 57. *Porter* changed the applicable evidentiary test from the *Frye* test to the broader test more recently articulated in *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).[3]

The *Porter* court explained that despite its rejection of the *Frye* test, in which "general acceptance" was the sine qua non of admissibility, courts should continue to consider general acceptance in making admissibility determinations. The court stated: "[W]e suspect that general acceptance in the relevant scientific community will continue to be the significant, and often the only, issue. . . . Thus, [a]lthough *Frye* may no longer be *the* standard for admissibility, general acceptance remains a part of the analysis, and in many cases its presence may alone be sufficient to admit the evidence. . . . That is, if a trial court determines that a scientific methodology *has* gained general acceptance, then the *Daubert* inquiry will generally end and the conclusions derived from that methodology will generally be admissible." (Citations omitted; emphasis in original; internal

[3] In *State* v. *Pjura*, 68 Conn. App. 119, 789 A.2d 1124 (2002), decided one year after *Russo*, we reiterated that the proponent of horizontal gaze nystagmus evidence must establish a proper foundation as set forth in *Daubert*.

quotation marks omitted.) *State* v. *Porter,* supra, 241 Conn. 84–85.

The *Porter* court went on to explain that if a principle or methodology has not gained general acceptance, scientific reliability may still be demonstrated through a trial judge's consideration of several nonexclusive factors. Those factors include (1) whether the methodology has been tested and subjected to peer review, (2) the known or potential rate of error, (3) the prestige and background of the expert witness supporting the evidence, (4) the extent to which the scientific technique in question relies on subjective interpretations and judgments by the testifying expert, and (5) whether the testifying expert can present the methodology underlying his scientific testimony in such a manner that the fact finder can reasonably draw its own conclusions therefrom. Id., 85–86.

We next had occasion to consider horizontal gaze nystagmus evidence in *State* v. *Commins,* supra, 83 Conn. App. 496, decided during the pendency of this appeal. In *Commins,* we squarely addressed for the first time the issue of whether horizontal gaze nystagmus evidence meets the *Porter* criteria and, thereby, satisfies the first prong of the *Merritt* test for admission.[4] In *Commins,* the trial judge conducted a *Porter* hearing during which he heard extensive testimony about the methodology underlying the horizontal gaze nystagmus test. The state's expert, a behavioral optometrist, testified that horizontal gaze nystagmus testing is generally

[4] *Commins* presented the first opportunity for this court to rule on the precise issue of whether horizontal gaze nystagmus evidence satisfies *Porter.* In *Merritt, Russo* and *State* v. *Pjura,* 68 Conn. App. 119, 789 A.2d 1124 (2002), we declined to reach that question on the ground that the trial court had not itself specifically ruled on the issue. In *Commins,* by contrast, the trial court made a specific determination that horizontal gaze nystagmus evidence satisfied *Porter,* thereby providing the necessary basis for our consideration.

accepted in the scientific community, has been comprehensively tested and subjected to peer review, can be explained to jurors in a manner that will assist them in executing their task and was not developed solely for the purpose of use in court. At the conclusion of the *Porter* hearing, the court found that the horizontal gaze nystagmus test and its underlying methodology is generally accepted in the scientific community—a conclusion that alone would likely suffice to establish a sufficient foundation for admission—but also that it satisfies many of the remaining *Porter* criteria. On the basis of that determination, the court allowed evidence related to the test.

On appeal, we concluded that the expert testimony adduced at the hearing provided a sufficient factual basis for the court to conclude that horizontal gaze nystagmus evidence satisfies the *Porter* test for the admission of scientific evidence and, therefore, satisfies the first prong of the *Merritt* test. We then turned to an analysis of the remaining two prongs of *Merritt*, namely, whether the officer was qualified to administer and grade the test, and whether the test was administered properly and in accordance with prevailing standards. *State* v. *Commins*, supra, 83 Conn. App. 505–508.

Our determination in *Commins* that horizontal gaze nystagmus evidence satisfies the *Porter* test for the admission of scientific evidence rendered it unnecessary for the court in the present case to conduct its own *Porter* hearing prior to admitting evidence about the test.[5] The trial court's thorough consideration of

---

[5] Although *Commins* was decided during the pendency of this appeal and, therefore, before the trial court's determination that a *Porter* hearing was not necessary in this case, our determination in *Commins* is nevertheless applicable here. "As a rule, judicial decisions apply retroactively. . . . Indeed, a legal system based on precedent has a built-in presumption of retroactivity." (Citation omitted; internal quotation marks omitted.) *State* v. *Ryerson*, 201 Conn. 333, 339, 514 A.2d 337 (1986).

the issue in *Commins* sufficiently demonstrated to this court that horizontal gaze nystagmus evidence satisfies *Porter*, and we see no compelling reason to put the state to the burden of having to reestablish, in case after case, the same proposition. Requiring our trial judges to repeatedly hold *Porter* hearings would serve no legitimate purpose and would needlessly squander judicial resources.[6]

We emphasize that this determination does not relieve the state of its burden to satisfy the remaining two prongs of the *Merritt* test in every case in which horizontal gaze nystagmus evidence is proffered. The state still must lay a proper foundation with regard to the qualifications of the individual administering the test and demonstrate that the test was conducted in accordance with generally accepted standards such as those specified in the relevant sections of the National Highway Traffic Safety Administration's manual. *State* v. *Merritt*, supra, 36 Conn. App. 91.[7]

We briefly address two concerns raised by the defendant in his brief. First, the defendant maintains that allowing trial judges to admit horizontal gaze nystagmus evidence without first conducting a *Porter* hearing will, in effect, permit courts to abandon their obligation, imposed by both *Porter* and *Daubert*, to act as a gatekeeper to ensure the relevancy and reliability of scientific evidence before consideration by the fact finder. See *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, supra, 509 U.S. 597; see also *State* v. *Porter*, supra, 241

[6] Courts in a number of other jurisdictions have determined that it is no longer necessary to establish the validity of horizontal gaze nystagmus testing in every case. See *State* v. *Commins*, supra, 83 Conn. App. 503 n.6. Many of those courts have either taken judicial notice of the reliability of horizontal gaze nystagmus testing or concluded that such evidence is admissible as a matter of law.

[7] No claim was made by the defendant with respect to these remaining two prongs of *Merritt*, and we therefore do not address them further.

Conn. 68–69.[8] Our determination today does not run afoul of that critical obligation.

The methodology underlying horizontal gaze nystagmus testing has been comprehensively scrutinized and found by this court in *Commins* to be reliable under *Porter* as a matter of law. Thus, although trial judges in future cases are no longer obligated to conduct their own *Porter* hearings before admitting such evidence, the underlying purpose of the gatekeeping function is still served because the methodology has already undergone the appropriate scrutiny.

In further support of his position that *Porter* hearings should be held in every case in which horizontal gaze nystagmus evidence is proffered, the defendant argues that the expert who initially rendered an opinion that such evidence is reliable in a past case, such as *Commins*, may no longer adhere to the same opinion regarding its reliability. Additionally, the defendant contends that an expert's opinion may be affected by factors unique to the particular case, such as the manner in which the test was administered and the existence of other factors that may impact performance on the test, like the ingestion of a diet drug, to which the defendant admitted in the present case.

Other courts have noted that there are many factors other than alcohol consumption that can cause nystagmus, including problems in the subject's inner ear labyrinth, physiological problems such as influenza and epilepsy, eye muscle fatigue, sunstroke or glaucoma, and the consumption of substances such as caffeine or nicotine. See, e.g., *State* v. *Dahood*, supra, 148 N.H. 729;

---

[8] Our Supreme Court stated in *Porter* that in exercising this gatekeeping function, the trial judge "should exclude scientific evidence . . . when . . . concerns render the technique, and the resulting evidence, incapable of assisting the fact finder in a sufficiently meaningful way." *State* v. *Porter*, supra, 241 Conn. 88.

see also *State* v. *Ito*, 90 Haw. 225, 230, 978 P.2d 191 (App. 1999).

Although the defendant's concerns are valid, they do not undercut the scientific premise underlying the horizontal gaze nytagmus test, i.e., that intoxicated people exhibit nystagmus. That there may be, in the particular case, a cause of nystagmus other than alcohol impairment, can be argued on cross-examination of the testifying police officer or elicited through the testimony of the defendant's own expert. Such a challenge pertains to the weight of the horizontal gaze nystagmus evidence rather than to its admissibility. *State* v. *Dahood*, supra, 148 N.H. 732.[9]

The same is true of any challenge to the administration of the test. Numerous courts have concluded that attacks on the administration of the horizontal gaze nystagmus test pertain to the weight rather than to the admissibility of the evidence. See, e.g., *State* v. *Pierce*, 266 Ga. App. 233, 236–37, 596 S.E.2d 725 (concluding that challenge to administration of test pertains to weight of evidence, not to admissibility), cert. denied, 2004 Ga. LEXIS 772 (September 7, 2004); *State* v. *Ito*, supra, 90 Haw. 239 (same); *Fargo* v. *McLaughlin*, 512 N.W.2d 700, 707 (N.D. 1994) (same); *Smith* v. *State*, 11 P.3d 931, 936 (Wyo. 2000) (same).[10]

Indeed, our Supreme Court stated in *Porter* that "[o]nce the validity of a scientific principle has been

[9] Nothing in our holding today precludes a trial court, in its discretion, from hearing a challenge to the test in such a case by means of either a motion in limine or a motion to suppress.

[10] It should be noted also that concerns regarding proper administration of the test and the potential for false positive results apply with equal force to the other field sobriety tests often administered by law enforcement, such as the one-leg stand and the walk and turn test. Evidence regarding a defendant's performance of those tests is routinely admitted into evidence. See, e.g., *State* v. *Commins*, supra, 83 Conn. App. 499; *State* v. *Merritt*, supra, 36 Conn. App. 92–93.

satisfactorily established, any remaining questions regarding the manner in which that technique was *applied* in a particular case is generally an issue of fact that goes to weight, and not admissibility." (Emphasis in original.) *State* v. *Porter*, supra, 241 Conn. 88 n.31. Also, as previously noted, the remaining two prongs of the *Merritt* test remain intact and require the state to demonstrate that the test was administered in accordance with prevailing standards and by a qualified individual. *State* v. *Merritt*, supra, 36 Conn. App. 91.

We accordingly conclude that the court did not abuse its discretion in permitting testimony concerning the horizontal gaze nystagmus test without first conducting a *Porter* hearing. Our determination in *Commins*, that horizontal gaze nystagmus evidence satisfies, as a matter of law, the *Porter* criteria for the admission of scientific evidence, obviated the need for the court here to conduct a *Porter* hearing before admitting evidence of the test.[11]

---

[11] That our affirmance of the court's determination is premised on *Commins* and not on the reasons relied on by the trial judge warrants a brief discussion. The trial judge declined to hold a *Porter* hearing on the basis of the doctrine of judicial notice, citing to two Superior Court cases in which there was testimony regarding the reliability of horizontal gaze nystagmus evidence. Although courts in other jurisdictions have declined to examine the validity and reliability of horizontal gaze nystagmus evidence after taking judicial notice of its reliability; see, e.g., *Emerson* v. *State*, 880 S.W.2d 759, 764–65 (Tex. Crim. App.), cert. denied, 513 U.S. 931, 115 S. Ct. 323, 130 L. Ed. 2d 284 (1994); we conclude after reviewing those cases that their underlying reasoning does not conform to our established notions of judicial notice.

"Judicial notice . . . meets the objective of establishing facts to which the offer of evidence would normally be directed." *State* v. *Tomanelli*, 153 Conn. 365, 368, 216 A.2d 625 (1966). Although a court may take judicial notice of a file of another action, that does not mean that the court can use every statement or conclusion found in the file, as such conclusions may not satisfy the doctrine of collateral estoppel. "Unless a prior adjudication satisfies the requirements for [collateral estoppel], information contained in a court file may be used only to prove that such information or document exists, not to prove the truth of facts recited or found therein." C. Tait, Connecticut Evidence (3d Ed. 2001) § 2.16.5, p. 124. It is well settled that "[c]ollateral estoppel may be invoked against a party to a prior adverse proceeding or against those in privity with that party." *Aetna Casualty &*

The judgment is affirmed.

*Surety Co.* v. *Jones*, 220 Conn. 285, 303, 596 A.2d 414 (1991). Our Supreme Court has made clear, however, that "[p]rivity is not established by the mere fact that persons may be interested in the same question or in proving or disproving the same set of facts. Rather, it is, in essence, a shorthand statement for the principle that collateral estoppel should be applied only when there exists such an identification in interest of one person with another as to represent the same legal rights so as to justify preclusion." (Internal quotation marks omitted.) *DaCruz* v. *State Farm Fire & Casualty Co.*, 268 Conn. 675, 691 n.16, 846 A.2d 849 (2004).

We note also that at least one court has reached a determination similar to the one we reach today on the basis of stare decisis. In *State* v. *Dahood*, supra, 148 N.H. 734, the New Hampshire Supreme Court concluded that horizontal gaze nystagmus evidence satisfies the *Daubert* test for admissibility and further stated that "under the doctrine of stare decisis, our decision today will be binding and, as a result, courts will not be required to establish the scientific reliability of the . . . test . . . in future cases."